In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00067-CV
______________________________


THE NORTHERN TEXAS/NORTHERN LOUISIANA
SYNOD, EARL ELIASON, AND MARK B. HERBENER, Appellants
 
V.
 
JANE ALFRED DOE, ET AL., Appellees


                                              

On Appeal from the 71st Judicial District Court
Harrison County, Texas
Trial Court No. 02-0157


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

          The Northern Texas/Northern Louisiana Synod, Earl Eliason, and Mark B. Herbener,
appellants (collectively "Northern Texas"), have appealed from a judgment rendered
against them in this civil lawsuit filed by Jane Alfred Doe, et al. No record has been filed
in this appeal. According to Northern Texas' notice of appeal, the trial court rendered
judgment February 10, 2005, following a jury trial. According to Northern Texas' docketing
statement, Northern Texas filed a motion for new trial. Northern Texas filed a notice of
appeal May 6, 2005.
          The clerk's record and reporter's record were due to be filed with this Court on or
before June 10, 2005. See Tex. R. App. P. 26.1, 35.3. Northern Texas does not claim to
be indigent and was thus responsible for paying or making adequate arrangements to pay
the costs for preparing the records. See Tex. R. App. P. 35.3(a), (b); 37.3(b), (c). The
record is now more than thirty days overdue. On June 24, 2005, we contacted Northern
Texas by letter. We gave appellants an opportunity to cure the defect and warned them
that, if we did not receive an adequate response within ten days, this appeal would be
subject to dismissal for want of prosecution. See Tex. R. App. P. 42.3(b), (c).
          No record has been filed, and despite our warning, Northern Texas has provided
this Court with no information to indicate that a record will be provided.
 

          Pursuant to Tex. R. App. P. 42.3(b), we dismiss the appeal for want of prosecution. 



                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      July 25, 2005
Date Decided:         July 26, 2005



otnote18 = '
Red Dot\'s attorney\'s fees for trial modified by $7,197.45 is $98,172.50. \
'

var WPFootnote19 = '
Because Red Dot was the prevailing party as to the breach of contract issues and the\
attorney\'s fees were awarded for its breach of contract claims, Red Dot is entitled to attorney\'s fees\
for the appeal to this Court. \
'

function WPShow( WPid, WPtext )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'visible'" );
 else
 {
 if( floatwnd == 0 || floatwnd.closed )
 floatwnd = window.open( "", "comment", "toolbars=0,width=600,height=200,resizable=1,scrollbars=1,dependent=1" );
 floatwnd.document.open( "text/html", "replace" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( "\r\n" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( WPtext );
 floatwnd.document.write( '
Close');
 floatwnd.document.write( "
" );
 floatwnd.document.close();
 floatwnd.focus();
 }
}

function WPHide( WPid )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'hidden'" );
}



















In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00084-CV
______________________________


ALL SEASONS WINDOW AND DOOR
MANUFACTURING, INC., AND WILLIAM KENT AKINS, Appellants
 
V.
 
RED DOT CORPORATION, Appellee


                                              

On Appeal from the 188th Judicial District Court
Gregg County, Texas
Trial Court No. 2002-1754-A


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

            All Seasons Window and Door Manufacturing, Inc., and William Kent Akins appeal the final
judgment of the trial court following a bench trial. Akins, the president of All Seasons, hired Red
Dot Corporation to construct a metal building so All Seasons could expand its operations. A dispute
arose due to Akins' belief that the construction was unnecessarily delayed and was slipshod. While
the dispute only concerned approximately $5,000.00, Akins withheld the entire final payment. 
Following a bench trial, the trial court found that Akins breached the contract and that he owed Red
Dot $143,800.44, plus interest for approximately three years, and $105,369.95 in attorney's fees. All
Seasons and Akins appeal the judgment of the trial court, and Red Dot has filed a cross-appeal. We
affirm in part, reverse in part, and modify in part.
            All Seasons and Akins raise fifteen points of error on appeal. Red Dot responded with six
reply points and raises two cross-points of error. We have consolidated the issues as follows: 
(1) Does All Seasons have standing to bring this appeal? (2) Did the trial court err in finding the
contract interest rate was ten percent rather than eighteen percent? (3) Did the trial court err in
concluding that interest should begin to accrue December 11, 2001? (4) Did the trial court err in
refusing to find the contract usurious? (5) Did the trial court err in offsetting the judgment against
Akins with All Seasons' $38.56 counterclaim? (6) Is the evidence sufficient to support the amount
of the attorney's fees awarded? 
            While All Seasons lacks standing to bring a claim for usury, it does have standing to pursue
its counterclaim for $38.56. The trial court erred in finding the contractual interest rate was ten
percent. The contract authorized interest at the maximum rate allowed by law, and the law allows
interest up to eighteen percent. Therefore, the contractual interest rate should have been eighteen
percent. Although legally and factually sufficient evidence supports the trial court's finding that
construction was completed October 24, 2001, the trial court erred in holding that interest should
accrue from December 11, 2004. Interest should accrue from October 24, 2001, because the final
payment was due on completion of erection. Red Dot did not commit usury. Last, there is sufficient
evidence to support the attorney's fees award except for the award of paralegal fees and expenses.
I.         Facts
            This case concerns a dispute over the construction of an industrial metal building. Akins,
the president of All Seasons, owned the property on which the building was constructed. All
Seasons, which was in the window manufacturing business, leased the property from Akins. Due
to an increase in business, All Seasons needed additional room for its manufacturing facility. Akins
contracted with Red Dot to erect a metal building in order to expand the space being used by All
Seasons. Red Dot was responsible for the construction of the metal building, while Akins retained
responsibility for the remainder of the project, including concrete, electrical, plumbing, and finishing
out the interior. 
            On March 5, 2001, Akins signed a contract with Red Dot. With the "change orders," the
contract price totaled $400,771.00. The contract included provisions detailing each party's duties,
a payment schedule, and provided for payment of reasonable attorney's fees in the event of a dispute. 
Construction was to begin August 14, 2001. Due to rain delays, construction actually began one
week later. Red Dot failed to deliver sufficient anchor bolts to be incorporated into the concrete. 
All Seasons had to purchase the additional bolts, which forms the basis of the $38.56 counterclaim
by All Seasons. During the construction, there were various problems, including column placement,
loose bolts, delays in delivery of materials, understaffing by the erection subcontractor, and defects
in the insulation. 
            Akins alleges the building should have been completed in August. Red Dot completed the
erection of the building October 24, 2001. However, Red Dot returned to tighten bolts, fix
insulation, incorporate an additional beam, and address other issues at the request of Akins and/or
All Seasons. On December 11, 2001, the final walk-through with a punch list was conducted and
Akins agreed to accept the project, with the understanding that additional repairs were to be made. 
Some repairs were completed December 11. Red Dot agreed to make the additional repairs, but
never has. 
            Pursuant to the contract, Akins paid ten percent of the contract price on signing the contract. 
Akins paid $218,300.00 on September 14, 2001, for the delivery of materials. On October 24, 2001,
Red Dot sent Akins an invoice for final payment in the amount of $143,839.00. On December 12,
2001, Akins tendered a check for $138,873.49 marked "payment in full." In a letter accompanying
the check, Akins informed Red Dot that the deductions were due to increased security costs caused
by delays in construction, the cost of pouring new footers for twelve columns, and the cost of the
anchor bolts. Red Dot refused to accept the check when Akins refused to remove the "payment in
full" language. When the parties could not reach an agreement concerning the final invoice, Red Dot
filed a mechanic's lien on the building and sought eighteen percent interest on the invoice. 
            Eventually, Akins sued Red Dot for usury, to quiet title, for breach of contract, and
harassment. Following a bench trial,


 the trial court found that Akins signed the contract in his
individual capacity and had breached the contract. The trial court entered several detailed findings
of fact. The trial court found Red Dot was justified in refusing to accept the check marked "payment
in full" and that Red Dot had only received $256,932.00 of the $400,771.00 due under the contract. 
The trial court also found that the contract was ambiguous concerning whether Akins signed in his
individual or personal capacity and determined that Akins signed in his personal capacity. The trial
court held that the contract, which stated interest would be charged at the maximum rate allowed by
law, authorized interest at the rate of ten percent. Although Red Dot had sought to collect eighteen
percent interest, the trial court found that Red Dot had not committed usury. The trial court
concluded that the transaction was not a loan or forbearance of money. The trial court rendered
judgment that Red Dot recover from Akins $143,800.44 in actual damages, $33,921.14 in contract
interest, attorney's fees, postjudgment interest, and costs. Akins appealed to this Court, and Red Dot
has filed a cross-appeal.
II.       All Seasons has Standing
            As a preliminary matter, Red Dot argues All Seasons lacks standing. Since the trial court
found All Seasons was not a party to the contract, Red Dot contends All Seasons does not have a
cognizable interest in this appeal. Although All Seasons lacks standing to pursue its usury claims
on appeal, All Seasons has standing to be a party to the appeal due to its claim for the cost of the
anchor bolts.
            Standing is a constitutional prerequisite to maintaining a suit under Texas law. Tex. Ass'n
of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 444 (Tex. 1993). Standing, as a necessary
component of a court's subject-matter jurisdiction, cannot be waived and can be raised for the first
time on appeal. Id. Standing requires the claimant to demonstrate a particularized injury distinct
from that suffered by the general public. Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 555–56
(Tex. 2000); see Rodgers v. RAB Inv., Ltd., 816 S.W.2d 543, 546 (Tex. App.—Dallas 1991, no writ). 
The claimant must have an actual grievance, not one that is merely hypothetical or generalized. 
Brown v. Todd, 53 S.W.3d 297, 302 (Tex. 2001). We review de novo the issue of standing. Tex.
Dep't of Transp. v. City of Sunset Valley, 146 S.W.3d 637, 646 (Tex. 2004). 
            Red Dot argues All Seasons lacks standing to pursue its usury claim because All Seasons was
not a party to the contract. All Seasons and Akins have consistently claimed All Seasons was not
a party to the contract. Because All Seasons successfully persuaded the trial court it was not a party
to the contract, Red Dot argues it lacks standing to appeal based on usury. Usury remedies are
personal to the debtor and restricted to the parties to the transaction. See Houston Sash & Door Co.
v. Heaner, 577 S.W.2d 217, 222 (Tex. 1979); W. Bank-Downtown v. Carline, 757 S.W.2d 111, 115
(Tex. App.—Houston [1st Dist.] 1988, writ denied); see also Tex. Fin. Code Ann. § 305.001
(Vernon Supp. 2005). Only the obligor has standing to assert a usury claim. Weisfeld v. Tex. Land
Fin. Co., 162 S.W.3d 379, 381 (Tex. App.—Dallas 2005, no pet.). Since the trial court found that
All Seasons was not a party to the contract and that finding has not been challenged on appeal, All
Seasons lacks standing to pursue usury claims against Red Dot.
            However, All Seasons does have standing to pursue its counterclaim for $38.56. Red Dot
argues All Seasons failed to plead any theory to justify recovery of the $38.56, which All Seasons
paid for the missing anchor bolts. Although All Seasons pled breach of contract, the $38.56 cannot
be recovered through breach of contract because the trial court found that All Seasons was not a
party to the contract. Standing is a distinct concept from capacity to sue. Roman Forest Pub. Util.
Dist. No. 4 v. McCorkle, 999 S.W.2d 931, 932 (Tex. App.—Beaumont 1999, pet. denied) (public
utility district had standing despite lack of damages, ownership of land, etc.). Whether All Seasons
failed to plead a cause of action is not relevant to whether All Seasons has standing.


 The issue of
standing is concerned with whether the claimant has a particularized injury distinct from that
suffered by the general public. Blue, 34 S.W.3d at 555–56. All Seasons has a particularized injury
distinct from that suffered by the general public and, therefore, the claim of $38.56 gives All Seasons
standing to appeal. 
            Although All Seasons does not have standing to bring usury claims against Red Dot, All
Seasons does have standing to be a party to the suit. We overrule Red Dot's counterpoint.
III.      Red Dot Established the Contractual Interest Rate Is Eighteen Percent As a Matter of
Law

            Red Dot and Akins both challenge the trial court's finding concerning the amount of interest
authorized by the contract. The trial court found that the interest under the contract, which provided
for interest at the maximum rate allowed by law, was ten percent. In its cross-appeal, Red Dot
claims the contract authorized interest at the rate of eighteen percent. Akins argues the interest rate
under the contract should have been six percent. We review de novo the trial court's conclusion. 
See In re Humphreys, 880 S.W.2d 402, 403 (Tex. 1994). 
            The contract provides that "[a]ll deferred payments shall bear interest from the time they are
due until paid at the maximum rate permitted by the applicable law." All Seasons and Akins argue
that the contract rate is six percent because the contract does not specify a rate of interest. Section
302.002 of the Texas Finance Code provides as follows: "If a creditor has not agreed with an obligor
to charge the obligor any interest, the creditor may charge and receive from the obligor legal interest
at the rate of six percent a year . . . ." Tex. Fin. Code Ann. § 302.002 (Vernon Supp. 2005). When
a contract does not specify a rate of interest, the statutory rate of six percent is read into the
agreement and becomes the maximum rate allowed on the transaction. Id.; Broady v. Johnson, 763
S.W.2d 832, 834 (Tex. App.—Texarkana 1988, no writ). All Seasons and Akins cite Tubelite v.
Risica & Sons, Inc., 819 S.W.2d 801, 805 (Tex. 1991), for the proposition that a rate greater than six
percent is usurious when the parties do not specify a rate. Tubelite is distinguishable because in that
case the contract entirely omitted any reference to interest. Id. Although an acknowledgment sent
after the formation of the contract provided for interest and late charges, the contract formed made
no reference to interest or late charges. Id. 
            In this case, the contract provided for interest, although it did not specify a numerical amount. 
The contract provided that interest would be charged "at the maximum rate permitted by law." The
Beaumont and Tyler Courts of Appeals have held the lack of a numerical rate of interest does not
establish six percent as the correct interest rate. See Whitehead Utils., Inc. v. Emery Fin. Corp., 697
S.W.2d 460, 461 (Tex. App.—Beaumont 1985, no writ) (holding that Article 5069-1.03, a precursor
to Section 302.002, does not apply when the parties contracted for the "highest contract rate of
interest Lessor may charge lessee under applicable law . . . ."); cf. Bundrick v. First Nat'l Bank of
Jacksonville, 570 S.W.2d 12, 15 (Tex. Civ. App.—Tyler 1978, writ ref'd n.r.e.) (allowing collection
of the maximum legal rate of interest for a contract that provided for "interest at the highest legal
contract rate from the date of such default . . . ."); AU Pharm., Inc. v. Boston, 986 S.W.2d 331, 334
(Tex. App.—Texarkana 1999, no pet.) (Section 302.002 does not apply when parties agreed to zero
percent interest). When the parties have agreed to a standard for the rate of interest, which can be
determined by reasonable calculations, Section 302.002 is inapplicable. See Whitehead Utils., Inc,
697 S.W.2d 462. We agree with the Beaumont and Tyler Courts of Appeals that the default interest
rate of Section 305.001 does not apply.
            In the alternative, Akins argues ten percent interest is the maximum rate authorized by law. 
Red Dot claims that eighteen percent interest is authorized by two different statutes. First, Red Dot
argues that Section 303.009(a) authorizes eighteen percent interest. Second, Red Dot contends that
Section 28.004 of the Texas Property Code applies. 
            Traditionally, the Texas Finance Code capped at ten percent the interest rate for which an
individual could contract. Section 302.001 provides that "[t]he maximum rate or amount of interest
is 10 percent a year except as otherwise provided by law." Tex. Fin. Code Ann. § 302.001(b)
(Vernon Supp. 2005). While the prior scheme still exists, the 1981 amendments to the Texas
Finance Code superimposed an alternative rate ceiling on the prior scheme. 28 Stephen Cochran,
Texas Practice: Consumer Rights and Remedies § 11.4 (3d ed. 2002). The optional rate
ceilings provide a floating ceiling based on formulas determined by the twenty-six week United
States Treasury Bills.


 Unless a higher rate is allowed by another law,


 the scheme includes a
minimum ceiling, which applies if the floating ceiling is lower than the minimum ceiling, and a
maximum ceiling, which applies if the floating ceiling is higher than the maximum ceiling.


 
            Under the optional rate ceilings, the highest amount authorized by Texas law was at least
eighteen percent. "The parties to a written agreement may agree to an interest rate . . . that does not
exceed the applicable weekly ceiling." Tex. Fin. Code Ann. § 303.002 (Vernon Supp. 2005). 
Although Red Dot failed to prove the ceilings were eighteen percent, this Court could take judicial
notice of the applicable ceilings.


 However, there is no need to take judicial notice of the weekly
rates because the minimum ceiling is eighteen percent and Red Dot never sought to charge interest
greater than eighteen percent. The Texas Finance Code allows interest of at least eighteen percent.
            In addition, the Texas Property Code authorizes eighteen percent interest. Section 28.004
of the Texas Property Code provides:
                        (a) An unpaid amount required under this chapter begins to accrue interest
on the day after the date on which the payment becomes due.
(b) An unpaid amount bears interest at the rate of 1 1/2 percent each month.
(c) Interest on an unpaid amount stops accruing under this section on the
earlier of:
(1)the date of delivery;
(2)the date of mailing, if payment is mailed and delivery occurs
within three days; or
(3)the date a judgment is entered in an action brought under this
chapter.

Tex. Prop. Code Ann. § 28.004 (Vernon 2000). The payment must be made within thirty-five days
of receipt of a written invoice unless there is a good-faith dispute. Compare Tex. Prop. Code Ann.
§ 28.002(a) (Vernon 2000), with Tex. Prop. Code Ann. § 28.003 (Vernon 2000).
            The trial court erred in finding the interest rate under the contract was ten percent. Because
the highest rate authorized by law was eighteen percent, the interest rate under the contract should
have been eighteen percent.
IV.      Interest Began To Accrue October 24, 2001
            In its second cross-point of error, Red Dot argues the trial court erred in finding the interest
began to accrue December 11, 2001. Red Dot alleges the erection was completed by October 24,
2001, but Akins argues the building was not completed until December 11, 2001.


 The trial court
found the construction of the buildings was completed by October 24, 2001, but Red Dot "completed
various punch-list items brought to its attention by Akins, to the satisfaction of Akins, by
December 11, 2001." The trial court concluded interest should accrue from December 11, 2001. 
There is sufficient evidence to support the trial court's finding that construction was completed by
October 24, 2001. However, the trial court erred in concluding interest should accrue from
December 11, 2001.
            Findings of fact entered in a case tried to the court are of the same force and dignity as a
jury's answers to jury questions. Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex.
1991). The trial court's findings of fact are reviewable for evidentiary sufficiency by the same
standards that are applied in reviewing evidentiary sufficiency to support a jury's verdict. Ortiz v.
Jones, 917 S.W.2d 770, 772 (Tex. 1996).
            When deciding a legal sufficiency point concerning a fact issue, we must consider all the
evidence in the record in the light most favorable to the party in whose favor the verdict has been
rendered, and we must apply every reasonable inference that could be made from the evidence in that
party's favor. Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). We
disregard all evidence and inferences to the contrary. Burroughs Wellcome Co. v. Crye, 907 S.W.2d
497, 499 (Tex. 1995). A no-evidence point will be sustained when (a) there is a complete absence
of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight
to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no
more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. 
Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998). More than a scintilla
of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by
reasonable minds about the existence of a vital fact. Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.,
77 S.W.3d 253, 262 (Tex. 2002).
            If we find some probative evidence, we will test the factual sufficiency of that evidence by
examining the entire record to determine whether the finding is clearly wrong and unjust. When
considering a factual sufficiency challenge to a jury's verdict, courts of appeals must consider and
weigh all of the evidence, not just that evidence which supports the verdict. Mar. Overseas Corp.
v. Ellis, 971 S.W.2d 402, 406–07 (Tex. 1998). A court of appeals may set aside the verdict only if
it is so contrary to the great weight and preponderance of the evidence that the verdict is clearly
wrong and unjust. Id. at 407; Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). The court of appeals
is not a fact-finder. Accordingly, the court of appeals may not pass on the witnesses' credibility or
substitute its judgment for that of the fact-finder, even if the evidence would clearly support a
different result. Ellis, 971 S.W.2d at 407. 
            This issue basically turns on when the final payment was due. Red Dot argues the final
payment was due when the building was completed October 24, 2001. According to Red Dot, the
contract required payment of the balance on "completion of erection." While the contract does
provide that the final payment is due on "completion of erection," it does not define what completion
of erection means. The contract provides: "Terms of Payment: Unless changed by the terms of a
payment schedule above, materials are to be invoiced on date of shipment for contract value of each
shipment. Erection charges are to be invoiced when erection is complete . . . ." Earlier in the
contract, the contract provides as follows:



            Terms of payment:     $38,632.00      with order
                                                224,308.00      material delivery
                                                123,375.00      completion of erection
                                              $386,315.00       TOTAL

Courts should give terms their plain, ordinary, and generally accepted meaning, unless the contract
indicates otherwise. Heritage Res., Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996). Under
the plain language of the contract, the final payment was due on completion of the erection.



            The evidence is sufficient to support the trial court's finding that construction was completed
by October 24, 2001. Ronald Acree, a subcontractor for Red Dot, testified the building was
complete October 24, 2001. This arises to more than a scintilla of evidence that erection was
complete by October 24, 2001. While there is some evidence the building was not complete in all
respects, the trial court's finding is not so contrary to the great weight and preponderance of the
evidence that it is clearly wrong or unjust.


 The evidence is legally and factually sufficient that
erection was completed by October 24, 2001.
            Because the trial court found construction was complete by October 24, 2001, it erred in
holding interest should accrue from December 11, 2001. When interest should begin to accrue is
an issue of law, which we review de novo. The contract provides that the final payment is due on
completion of erection.


 Since construction was complete October 24, 2001, interest should have
begun to accrue October 24, 2001.
V.        Red Dot Did Not Commit Usury
            In his first six points of error, Akins challenges the trial court's denial of his usury claims. 
Akins argues that usury was proven as a matter of law, or in the alternative, argues the evidence is
factually insufficient to support the trial court's holding. According to Akins and All Seasons, usury
was established as a matter of law or by the great weight and preponderance of the evidence if the
contractual interest rate was six percent or even ten percent. As discussed above, Red Dot did not
attempt to charge an illegal rate of interest. The trial court's finding is supported by legally and
factually sufficient evidence.
            Akins alleges the trial court erred in denying his usury claims because any interest in excess
of ten percent is usury in Texas. Section 305.001 of the Texas Finance Code imposes liability for
contracting for, charging, or receiving interest greater than the amount authorized by law. Section
305.001 provides as follows: 
(a) A creditor who contracts for, charges, or receives interest that is greater
than the amount authorized by this subtitle . . . is liable to the obligor for an amount
that is equal to the greater of:
(1) three times the amount computed by subtracting the amount of
interest allowed by law from the total amount of interest contracted for,
charged, or received; or
(2) $2,000 or 20 percent of the amount of the principal, whichever is
less.

Tex. Fin. Code Ann. § 305.001(a). The solicitation of interest, through a demand letter, exceeding
that allowed by law may constitute a "charge" for the purposes of Section 305.001. Hoxie Implement
Co. v. Baker, 65 S.W.3d 140, 146 (Tex. App.—Amarillo 2001, pet. denied). However, as discussed
above, eighteen percent interest was permissible under Texas law. Because the rate of interest Red
Dot charged was legal, Red Dot did not commit usury.
            Alternatively, Akins argues Red Dot committed usury because it sought to charge interest
from October 24, 2001, instead of December 11, 2001, and from August 14, 2001, to September 14,
2001.


 The legality of the interest rate depends on when the payment was due. Interest charged at
any rate for a period contracted by the parties to be free of interest is usurious. PJM, Inc. v. Walter
Clark Adver., Inc., 624 S.W.2d 282, 284–85 (Tex. App.—Dallas 1981, writ ref'd n.r.e.); see Heaner,
577 S.W.2d at 221. The contract provided: "Terms of Payment: Unless changed by the terms of
a payment schedule above, materials are to be invoiced on date of shipment for contract value of
each shipment. Erection charges are to be invoiced when erection is complete . . . ." Earlier in the
contract, the contract provided as follows:



            Terms of payment:     $38,632.00      with order
                                                224,308.00      material delivery
                                                123,375.00      completion of erection
                                              $386,315.00       TOTAL

Therefore, the contract required the second payment to be made on delivery of the materials. As
discussed above, the contract requires the final payment to be made on the completion of erection. 
Because the materials were delivered August 14, 2001, and there is sufficient evidence to support
the trial court's finding that construction was completed October 24, 2001, Red Dot could charge
interest during the periods alleged. 
            Legally and factually sufficient evidence supports the trial court's finding that Red Dot did
not commit usury. The law authorizes interest to be charged at eighteen percent. Further, Red Dot
did not commit usury when it attempted to charge interest for the periods from October 24, 2001
through December 11, 2001, and for the tardiness of Akins' second payment, since Red Dot could,
under the contract, legally charge interest during those periods under the contract.
VI.      The Trial Court Erred by Deducting $38.56 from the Amount Owed by Akins
            The evidence established as a matter of law that All Seasons paid $38.56 for anchor bolts,
which were the responsibility of Red Dot. Acree conceded in his testimony Red Dot owed All
Seasons the $38.56; e-mails introduced into evidence established there was an error in the amount
of anchor bolts that were sent to the jobsite, and All Seasons introduced into evidence the receipt for
the anchor bolts. Because All Seasons and Akins are separate entities, the trial court erred in
awarding the $38.56 to Akins.
VII.     The Attorney's Fees Are Supported by Sufficient Evidence
            In their seventh through thirteenth points of error, Akins and All Seasons challenge the trial
court's award of attorney's fees to Red Dot. In essence, Akins is complaining that the amount of the
attorney's fees is excessive. We review the award of attorney's fees for legal and factual sufficiency
of the evidence. See Bocquet v. Herring, 972 S.W.2d 19, 20 (Tex. 1998); Stewart Title Guar. Co.
v. Sterling, 822 S.W.2d 1, 12 (Tex. 1991).


 
            Attorney's fees must be based on some statutory or contractual authority. Holland v.
Wal-Mart Stores, Inc., 1 S.W.3d 91, 95 (Tex. 1999). A contract may provide that the prevailing or
successful party in litigation arising out of the contract is entitled to recover attorney's fees from the
other party. See Robbins v. Capozzi, 100 S.W.3d 18, 27 (Tex. App.—Tyler 2002, no pet.). In
determining whether attorney's fees are reasonable, the trial court should consider the factors
discussed in Arthur Anderson & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex. 1997).
            Red Dot employed two law firms at various stages of the litigation. Guy Harrison, Red Dot's
expert on attorney's fees, testified that Cowles & Thompson billed Red Dot for $32,769.65 in
attorney's fees and that Fulbright and Jaworski billed Red Dot for $87,669.95, for a total of
$138,139.60. Harrison estimated the fees that had been incurred since the last billing at $17,700.00. 
Without the Cowles & Thompson fees, the attorney's fees came to $105,369.95.
            The trial court stated in a letter to the parties that the "attorney's fees expended by plaintiff
in connection with the Henderson County litigation to be unnecessary and unreasonable."


 The trial
court then awarded $105,369.95 for attorney's fees, the maximum fees for the remaining attorney's
fees supported by the testimony of Harrison. The trial court stated that, although the fees were
"high," they were not unreasonable and unnecessary. 
            First, Akins argues the trial court erred in awarding attorney's fees in excess of $250.00 per
hour when the evidence only established that $250.00 per hour was a reasonable rate. In general,
the reasonableness of attorney's fees is a question of fact. City of Garland v. Dallas Morning News,
22 S.W.3d 351, 367 (Tex. 2000). Harrison testified that he thought $250.00 per hour was a "more
appropriate" fee, but that $300.00 per hour could be reasonable in some circumstances. Harrison
testified that, after adjusting rates exceeding $250.00 per hour to $250.00 per hour, Red Dot's
attorney's fees came to $125,043.15.


 Harrison's testimony that that amount was reasonable and that
the case was not "overstaffed," is some evidence the attorney's fees are reasonable and necessary. 
Further, the great weight and preponderance of the evidence does not indicate the attorney's fees are
unreasonable.
            Second, Akins argues the trial court erred in awarding recovery of paralegal fees and other
expenses in the award of attorney's fees. An award of attorney's fees may include a legal assistant's
time to the extent that the work performed "has traditionally been done by any attorney." Clary
Corp. v. Smith, 949 S.W.2d 452, 469 (Tex. App.—Fort Worth 1997, writ denied); Gill Sav. Ass'n
v. Int'l Supply Co., 759 S.W.2d 697, 702 (Tex. App.—Dallas 1988, writ denied). To recover
attorney's fees for work performed by legal assistants, "the evidence must establish: (1) the
qualifications of the legal assistant to perform substantive legal work; (2) that the legal assistant
performed substantive legal work under the direction and supervision of an attorney; (3) the nature
of the legal work performed; (4) the legal assistant's hourly rate; and (5) the number of hours
expended by the legal assistant." Multi-Moto Corp. v. ITT Commercial Fin. Corp., 806 S.W.2d 560,
570 (Tex. App.—Dallas 1990, writ denied); see Gill Sav. Ass'n, 759 S.W.2d at 704–05. Because
there was no evidence concerning the legal assistants other than the hourly rate and number of hours
expended, we modify the award of attorney's fees in the amount of $4,819.50 for work performed
by legal assistants. Red Dot has failed to provide any authority for the award of expenses to this
Court or the trial court. Attorney's fees must be based on some statutory or contractual authority. 
Holland, 1 S.W.3d at 95. Because Red Dot had the burden of proving its attorney's fees were
reasonable and failed to prove it was entitled to the expenses, we modify the award for expenses by
$2,377.95.
            Third, Akins argues the attorney's fees are unreasonable because the actual amount in 
controversy was only $4,926.95. While the attorney's fees may be excessive if Akins had paid the
amount not in dispute under the contract, Akins never tendered the amount not in dispute to Red Dot. 
The amount in controversy was actually $143,839.00. Therefore, we cannot conclude the amount
in dispute indicates the attorney's fees are unreasonable. 
            All Seasons argues, because it prevailed on its counterclaim for $38.56, it is entitled to
attorney's fees. All Seasons failed to segregate which portion of its attorney's fees concerned the
counterclaim. Although there was no objection to the failure to segregate,


 an award of $29,511.29
for attorney's fees for a $38.56 claim is clearly unreasonable. The trial court did not err in refusing
to award attorney's fees for the $38.56 counterclaim.
            Last, All Seasons and Akins argue the trial court erred in failing to condition the attorney's
fees awarded for the appeal on the appeal being successful. An award for attorney's fees for an
appeal should be conditioned on a successful appeal. Westech Eng'g, Inc. v. Clearwater
Constructors, Inc., 835 S.W.2d 190, 205 (Tex. App.—Austin 1992, no writ). We modify the
judgment to reflect that Red Dot is only eligible to receive attorney's fees for its appeal if its appeal
of the breach of contract issues is successful. See J.C. Penney Life Ins. Co. v. Heinrich, 32 S.W.3d
280, 290 (Tex. App.—San Antonio 2000, pet. denied). 
            The trial court awarded the maximum attorney's fees supported by the testimony. Therefore,
the award must have included the fees for paralegals and expenses. Because there is no evidence
Red Dot was entitled to the paralegal fees and expenses, we modify the award by $7,197.45. We
modify the judgment to condition attorney's fees for appeal on the success of that appeal.
VIII.   Conclusion
            We affirm the judgment of the trial court in part, reverse in part, and modify in part. 
Although All Seasons lacks standing for its usury claims, All Seasons has standing based on its claim
for the amount it spent on anchor bolts. The trial court erred in finding the interest rate under the
contract was ten percent. We modify the judgment that the interest rate under the contract was
eighteen percent. We affirm the trial court's finding that construction was complete October 24,
2001, but modify the ruling that interest should accrue from October 24, 2001. We affirm the trial
court's determination that Red Dot did not commit usury. The trial court erred in awarding to Akins
the $38.56 expended by All Seasons for anchor bolts. Because Red Dot failed to prove it was
entitled to paralegal fees and expenses, we modify the award for attorney's fees by $7,197.45. We
modify the judgment to condition attorney's fees for appeal on the success of that appeal. 
            We modify the judgment that Red Dot recover from Akins' damages in the amount of
$143,839.00, interest at a rate of eighteen percent on $143,839.00 from October 24, 2001;
$98,172.50 in attorney's fees for the trial of the case;


 and $10,000.00 in attorney's fees for the
successful appeal to this Court.


 We reverse and render judgment that All Seasons recover $38.56
from Red Dot. 
            We affirm the trial court's judgment in all other respects. 
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          October 5, 2005
Date Decided:             November 29, 2005