NO. 07-11-0163-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

AUGUST 9, 2012

_____


JERRY ULMER D/B/A LONGHORN CONSTRUCTION
AND MAINTENANCE, APPELLANT

V.

SAM MOORE AND SHARIE MOORE, APPELLEES

_____

FROM THE 110TH DISTRICT COURT OF FLOYD COUNTY;

NO. 9679; HONORABLE WILLIAM P. SMITH, JUDGE

_____

Before HANCOCK and PIRTLE, JJ. and BOYD, S.J.[1]

**MEMORANDUM OPINION**

Appellant, Jerry Ulmer d/b/a Longhorn Construction and Maintenance, appeals from entry of summary judgment in favor of Appellees, Sam Moore and Sharie Moore, in Ulmer's action for breach of a construction contract. In support, Ulmer asserts: (1)

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. § 75.002(a)(1) (West 2006).

the Prompt Payment for Contractors and Subcontractors Act[2] permitted Ulmer to charge the Moores 18% interest on amounts past due under the construction contract; (2) there was no loan of money from Ulmer to the Moores that made the Texas Finance Code's interest provisions[3] applicable; (3) his claim for prejudgment interest did not subject him to usury penalties; and (4) he did not extend credit or advance funds to the Moores that made the usury statutes applicable. We reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND

In August 2000, Ulmer and the Moores entered into a written contract whereby Ulmer agreed to deliver 1,500 cubic yards of mixed railroad ballast rock and caliche to improve the road and driveway to the Moores' residence in return for three progress payments totaling $10,500.00.[4] The contract made no provision for the payment of interest.

In December 2000 and August 2001, Ulmer sent invoices to the Moores showing a balance due of $7,000.00. Each invoice indicated that payment was due upon receipt of the invoice and amounts past due would bear interest at the rate of 1.5 percent per

_____

[2]*See* Tex. Prop. Code Ann. §§ 28.001-28.010 (West 2000). Throughout the remainder of this opinion, we will refer to the Texas Property Code as "section ___" or "§ ___" and we will refer to the Prompt Payment for Contractors and Subcontractors Act simply as "the Act."

[3]Tex. Fin. Code Ann. §§ 302.001-305.104 (West 2006).

[4]A $3,500.00 deposit was due upon acceptance of the contract and two installments of $3,500.00 each were due as specified deliveries were completed. Per the contract, Ulmer was not responsible for any machine work and labor.

month or 18 percent annually.[5]  In October 2001, the Moores made a second payment of $3,500.00.  In December 2002, Ulmer sent a formal demand letter to the Moores' attorney indicating that, if the Moores did not pay the balance then owing ($5,465.51), he would file a collection suit.  In June 2004, Ulmer filed his *Original Petition*, which was subsequently amended to seek collection of the principal balance of $3,500.00, together with attorney's fees, costs and "pre- and post-judgment interest at the highest rate allowed by law."  The Moores responded by alleging Ulmer breached their contract and negligently performed the work.  The Moores further asserted that the interest sought by Ulmer was usurious and they were entitled to credit/offset.

In November 2010, the Moores moved for summary judgment contending Ulmer had charged a usurious rate of interest under the Texas Finance Code by way of the two invoices and the demand letter.  As a result, they asserted they were entitled to a take nothing judgment against Ulmer and the recovery of their attorney's fees.  Ulmer responded that the Texas Finance Code was inapplicable and, as a contractor, the Act authorized him to charge 18% interest on the outstanding balance due.

In March 2011, the trial court granted the Moores' motion for summary judgment. The trial court reasoned that the interest rate sought by Ulmer in his demand letter was usurious and, as a result, he forfeited the remaining unpaid principal balance together with any interest.  No attorney's fees were awarded to either party.  Ulmer filed a timely notice of appeal.  The Moores did not.  This appeal followed.

_____

[5]Ulmer concedes in his affidavit filed in response to the Moores' *Motion for Summary Judgment* that "the Moores never agreed to the payment of the invoices," "never agreed to the interest charge in the invoices," and "[t]here was no amendment or modification of the original contract as a result of the sending of the invoices."

## DISCUSSION

The crux of this appeal is the applicability of the Act to the facts of this case. The trial court found that the Act was inapplicable to Ulmer's claim for payment of past due amounts and, as a result, the interest he sought to collect by way of the invoices and demand letter was usurious under the Texas Finance Code. During closing arguments before this Court, the Moores conceded that a claim for usury would not exist if the Act were applicable. We find the Act does apply.

## STANDARD OF REVIEW

We review the trial court's summary judgment *de novo. Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005). Summary judgment is appropriate if the movant establishes there is no genuine issue of material fact and judgment should be granted as a matter of law. Tex. R. Civ. P. 166a(c); *Diversicare General Partner, Inc. v. Rubio,* 185 S.W.3d 842, 846 (Tex. 2003). In reviewing a trial court's summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Dorsett*, 164 S.W.3d at 661; *Providence Life and Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

Statutory construction is a legal question we also review *de novo. City of Rockwall v. Hughes,* 246 S.W.3d 621, 625 (Tex. 2008). In construing statutes, we ascertain and give effect to the Legislature's intent as expressed by the language of the statute. *See State v. Shumate*, 199 S.W.3d 279, 284 (Tex. 2006). We use definitions prescribed by the Legislature and any technical or particular meaning the words have

4

acquired. Tex. Gov't Code Ann. § 311.011(b) (West 2005). Otherwise, we construe the statute's words according to their plain and common meaning; *Texas Dep't of Transp. v. City of Sunset Valley,* 146 S.W.3d 637, 642 (Tex. 2004), unless a contrary intention is apparent from the context; *Taylor v. Fireman's and Policeman's Civil Serv. Comm. of City of Lubbock,* 616 S.W.2d 187, 189 (Tex. 1981), or unless such a construction leads to absurd results. *Univ. of Tex. S. W. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 356 (Tex. 2004). When a statute's language is clear and unambiguous, however, it is inappropriate to resort to rules of construction or extrinsic aids to construe the language. *City of Rockwall*, 246 S.W.3d at 626.

## THE ACT

The Moores contend the Act does not apply to the circumstances of this case because Ulmer was a materialman, not a contractor. They also contend that to qualify as a contractor Ulmer was required to provide labor or work to improve the property, not simply furnish materials. Under the Act, a "contractor" is a "person who contracts with an owner to *improve* real property or perform construction services for an owner." § 28.001(1). An "owner" is a person "with an interest in real property that is improved, for whom an improvement is made, and who ordered the improvement to be made." § 28.001(4). An "improvement" includes "constructing a driveway or roadway," § 28.001 (3), and to "improve" means, among other things, to "furnish any material" for the purpose of "construct[ing] a driveway or roadway." § 28.001 (2)(C)-(D). As such, according to the clear meaning of the Act, the Moores are "owners" and Ulmer is a "contractor" because they contracted with him to deliver materials, i.e., 1,500 cubic

5

yards of mixed railroad ballast rock and caliche, to construct or improve a driveway or roadway leading to their residence.

Under the Act, if an owner "receives a written payment request from a contractor for an amount that is allowed to the contractor under the contract for properly performed work or suitably stored or specially fabricated materials, the owner shall pay the amount to the contractor . . . no later than the 35[th] day after the owner receives the request." § 28.002(a). Further, "[a]n unpaid amount required under [the Act] begins to accrue interest on the day after the date on which the payment becomes due" and "bears interest at the rate of 1 ½ percent each month." § 28.004(a)-(b).[6]

Ulmer's suit is premised on a claim against the Moores for nonpayment under a contract requiring Ulmer to deliver mixed railroad ballast rock and caliche for the purpose of improving a road and driveway to the Moores' residence. As such, Ulmer is entitled to bring his action under the Act; § 28.005, as well as seek its remedies. *See All Seasons Window and Door Manufacturing, Inc. v. Red Dot Corp.,* 181 S.W.3d 490, 499, 502 (Tex.App.—Texarkana 2005, no pet.). Further, having found that it is legal for Ulmer to seek the interest rate provided by the Act, we also find that Ulmer did not commit usury by sending the invoices and demand letter to the Moores. *See Walker & Associates Surveying, Inc. v. Roberts,* 306 S.W.3d 839, 851 (Tex.App.—Texarkana

_____

[6]Interest on an unpaid amount stops accruing on the earlier of: (1) date of delivery; (2) the date of mailing, if payment is mailed and delivery occurs within three days; or (3) the date a judgment is entered in an action brought under this chapter. § 28.004(c). A contractor need only file a claim for general relief to be entitled to prejudgment interest under section 28.004(c)(3). *Talley Construction Co. v. Rodriguez,* No. 01-03-01147-CV, 2006 Tex. App. LEXIS 2721, at *31-32 (Tex.App.—Houston [1[st] Dist.] Apr. 6, 2006, no pet.) (mem. op. on reh'g). *See Gordon v. Leasman,* 365 S.W.3d 109, 118-19 (Tex.App.—Houston [1[st] Dist.] 2011, no pet.).

2010, no pet.) (an essential element of a usurious transaction is that the creditor exact a greater compensation *than allowed by law*).

The Moores cite *Brazos Concrete Products, Inc. v. Bullock*, 567 S.W.2d 877 (Tex.App.—Eastland 1978, no writ) for the proposition that Ulmer is a "materialman" rather than a "contractor." *Id.* at 877-78. *Brazos* is distinguishable as a sales tax case where the appellate court was asked to interpret provisions of the Texas Tax Code*. Id.* In addition, the language of the Act as it applies in this case is clear and unambiguous. As such, we need not resort to rules of construction or extrinsic aids to construe its language. *City of Rockwall*, 246 S.W.3d at 626.

The Moores also assert that, because the contract did not specify a rate of interest for amounts past due, Ulmer may not seek 18 percent interest under the Act, but is limited to 10 percent interest under the Texas Finance Code. *See* Tex. Fin. Code Ann. § 302.001(b) (West 2006) ("The maximum rate or amount of interest is 10 percent a year *except as otherwise provided by law*." (Emphasis added)). In support, the Moores cite *Hoxie Implement Co., Inc. v. Baker*, 65 S.W.3d 140 (Tex.App.—Amarillo 2001, pet. denied). Although, like here, the parties in *Hoxie* did not agree to pay interest at any particular rate; 65 S.W.3d at 16-17, *Hoxie* is distinguishable because neither party raised the applicability of the Act in their contract action. The Act expressly provides that an unpaid amount required thereby "bears interest at the rate of 1 ½ percent each month." § 28.004(b).[7] Further, as to section 302.001(b) of the Texas

_____

[7]The Act contains no provision requiring parties to enter into a contract providing for the payment of interest before a party may seek relief under the Act and we will not read such a provision into it. *See generally AMX Enterprises, L.L.P., Inc. v. Master Realty Corp.,* 283 S.W.3d 506, 511 (Tex.App.—Fort Worth 2009, no pet.) (op. on reh'g) (where the Act contains no provision for tolling the accrual of interest

Finance Code, in this instance, the 18 percent interest rate is "otherwise provided by law" per the Act regardless of whether the parties' contract provided for interest in the event payments became overdue.

Accordingly, Ulmer's first issue is sustained. Our sustention of issue one pretermits Ulmer's remaining issues and the Moores' cross-point of error. *See* Tex. R. App. P. 47.1.

**CONCLUSION**

The trial court's judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

Patrick A. Pirtle
Justice

_____

during periods of litigation delay, one may not be supplied by the court). Although the *All Seasons* court held that a contract providing for interest "at the maximum rate permitted by applicable law" permitted an 18 percent interest charge on amounts past due under the Act; *All Seasons Window,* 181 S.W.3d at 497-99, nowhere did the *All Seasons* court state that the "maximum rate permitted by law" language was necessary for a contractor to apply the Act's 18 percent rate of interest to any amount past due under a contract.