

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00179-CV

_____

SES OILFIELD ACQUISITIONS, INC., Appellant

V.

BILL BENEDICK, Appellee

On Appeal from the 352nd District Court
Tarrant County, Texas
Trial Court No. 352-348947-23

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

In a single issue, Appellant SES Oilfield Acquisitions, Inc. challenges the size of the $102,964 attorney's-fees award to Appellee Bill Benedick on his petition to enforce his shareholder's rights to examine SES's corporate records. *See* Tex. Bus. Org. Code Ann. § 21.218. Because sufficient evidence supports the fee award and the trial court thus did not abuse its discretion, we will affirm.

## I. Background

Benedick—who had owned roughly 10% of SES's stock since 2014—was an SES director and was president and chief executive officer of a related entity until he was removed from those positions in the fall of 2023. Benedick then sought to examine SES's books and records in accordance with Section 21.218 of the Texas Business Organizations Code.[1] *Id.*

After initially agreeing to a time for such inspection, SES cancelled it on one day's notice due to SES's surmise that Benedick meant to compete within the same industry. SES acknowledged that based on its change of heart, Benedick might

---

[1]At the time, Section 21.218(b) provided that, "[o]n written demand stating a proper purpose," someone holding at least five percent of a corporation's outstanding shares may examine and copy the corporation's "books, records of account, minutes, share transfer records, and other records, whether in written or other tangible form, if the record is reasonably related to and appropriate to examine and copy for the proper purpose." Act of May 2, 2023, 88th Leg., R.S., ch. 27, § 26, 2023 Tex. Gen. Laws 40, 46 (amended 2025) (current version at Tex. Bus. Orgs. Code Ann. § 21.218(b)).

"petition the Court requesting an order for access to records and books, in which case [SES] w[ould] oppose the production."

Sure enough, Benedick soon filed his petition, in December 2023. SES responded in early February 2024 that although it had provided "much of the requested documents," it "denie[d] that Benedick ha[d] asserted a proper purpose for such requested documents," but SES did not timely serve initial disclosures under Rule 194.2(a). *See* Tex. R. Civ. P. 194.2(a) (requiring initial disclosures 30 days after an answer is filed or general appearance entered).

SES also failed to respond to Benedick's March 2024 document request, leading to a motion to compel that the trial court granted in late May 2024. After SES ignored the trial court's order, Benedick moved for contempt and for sanctions in June 2024. The day before the scheduled July 11, 2024 hearing, SES served its initial disclosures and produced certain documents. In its disclosures, SES stated that it had "initially contested the documents sought, but ha[d] now produced the documents."

The trial court granted Benedick's motion for contempt and for sanctions and assessed sanctions against SES of over $10,000, an amount that represented Benedick's reasonable and necessary attorney's fees incurred in connection with his contempt and sanctions motion.[2]

---

[2]SES paid the sanctions in full.

3

Some two weeks later, Benedick told SES that he wanted to depose a corporate representative. SES suggested providing an affidavit describing its document-search methods instead of going through a deposition, but Benedick preferred a deposition to "help [him] understand what records were generated by SES and when, so that [he could] know for certain that no other responsive records [were] missing here." After some back and forth between the parties, Benedick noticed a corporate-rep deposition. SES resisted by moving to quash and for a protective order. After a September 2024 hearing, the trial court ordered SES to produce a corporate rep for deposition but limited the proposed topics' scope.[3]

Before the deposition took place on October 8, 2024, SES amended its response to Benedick's petition, no longer disputing that Benedick had asserted a proper purpose for the documents he had requested and asserting that it had already provided responsive documents. But on the morning of the deposition, SES produced additional documents that were responsive to Benedick's March 2024 document request. Around a week later, SES provided another responsive document—a written consent of shareholders adopting a restated and amended shareholders agreement. Then roughly two or three weeks after the deposition, SES sent Benedick updated

---

[3]According to the trial testimony, Benedick's legal team devoted roughly thirteen hours of time to preparing the deposition notice, communicating with SES's lawyer, responding to SES's motion to quash, and preparing for and attending the hearing.

ownership information that Benedick asserted at trial was also responsive to his document request and to the trial court's May 2024 order on his motion to compel.[4]

After the parties unsuccessfully mediated in December 2024, the trial court conducted a bench trial in January 2025. In addition to awarding Benedick his attorneys' fees, the final judgment contained a writ of mandamus directing SES to produce records for inspection and included the trial court's opinion that SES had violated Section 21.218 of the Texas Business Organizations Code, triggering its liability for Benedick's costs and expenses, including attorneys' fees, involved in enforcing his statutory rights. *See* Tex. Bus. Org. Code Ann. § 21.222.

## II.  Attorney's-Fees Evidence; Factual Findings

Net of the sanctions that SES had paid in July 2024, Benedick sought to recover the entirety of his fees through trial, $102,964, and put into evidence his lawyers' detailed billing records. That total included $19,204.50 of paralegal time and excluded some $11,800 in attorney's fees incurred before suit was filed. In addition, Benedick's lead counsel testified that approximately $10,000 of additional fees either were not charged or were written off in the exercise of billing judgment and that the total sought also excluded fees for unrelated services.

---

[4]Testimony at trial was that Benedick's lawyers spent 17.6 hours preparing for and taking SES's deposition and obtaining documents from SES that the trial court had, in May 2024, ordered produced.

SES did not call any witnesses or controvert Benedick's fee-related evidence. It argued instead that because it had substantively complied with Benedick's document request in July and because Benedick's fees through that time were only around $25,000 (of which SES had paid close to $10,500 as sanctions), the fees charged after July 2024—a time when "this case was essentially over"—were "excessive."

Disagreeing, the trial court entered judgment awarding Benedick $102,964 for "reasonable and necessary attorney's fees through trial," together with conditional appellate fees that SES does not challenge. The trial court later entered findings of fact and conclusions of law discussing the lodestar analysis set forth in *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 497–502 (Tex. 2019) (requiring court to (1) determine reasonable number of hours spent on case and reasonable hourly rate for that work and (2) multiply hours by rate to arrive at base fee (lodestar) that carries "strong presumption" of reasonableness when supported by sufficient evidence such as contemporaneous billing records), and the factors warranting a departure from the lodestar as established in *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

Based on its analysis, the trial court concluded that

- the hourly rates charged were within the range of reasonable rates in the Tarrant County market for similarly experienced attorneys and paralegals;

- no adjustment of the lodestar was warranted; and

- applying the lodestar and *Arthur Andersen* factors, "attorney's fees in the amount of $102,964.00 were reasonable and necessary in the prosecution of

6

Bill Benedick's claim against SES after subtracting the $10,407.50 already paid by SES."[5]

### III.   Reviewing the Attorney's-Fees Award

Generally, we review an award of attorney's fees for an abuse of discretion. *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex. 1990); *Challis v. Fiamma Statler, LP*, No. 02-22-00047-CV, 2023 WL 2534470, at *1 (Tex. App.—Fort Worth Mar. 16, 2023, no pet.) (mem. op.); *Asta Partners, LLC v. Palaniswamy*, No. 02-20-00371-CV, 2021 WL 5133888, at *8 (Tex. App.—Fort Worth Nov. 4, 2021, no pet.) (mem. op.). A trial court abuses its discretion if it acts without reference to any guiding rules or principles or if its ruling is not supported by legally or factually sufficient evidence. *In re State Farm Mut. Auto. Ins. Co.*, 629 S.W.3d 866, 872 (Tex. 2021) (orig. proceeding); *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012); *Mignogna v. Funimation Prods., LLC*, No. 02-19-00394-CV, 2022 WL 3486234, at *16 (Tex. App.—Fort Worth Aug. 18, 2022, pet. denied) (mem. op.). Although a trial court must "do more than simply act as a rubber-stamp, accepting carte blanche the amount appearing on the bill," *McGibney v. Rauhauser*, 549 S.W.3d 816, 821 (Tex. App.—Fort Worth 2018, pet. denied), this "does not mean that a trial court always

---

[5]Although this latter statement appears within the trial court's conclusions of law, SES suggests—and Benedick concurs—that it is better characterized as a fact finding. We agree. *See Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 534 S.W.3d 558, 587 (Tex. App.—San Antonio 2017), *aff'd*, 593 S.W.3d 324 (Tex. 2020) (authorizing reviewing court to recategorize legal conclusions as fact findings subject to evidentiary-sufficiency standard where appropriate).

abuses its discretion by awarding the total amount of attorney's fees requested by a litigant; rather, the record must contain sufficient evidence that the total amount of requested fees is reasonable," *McComb v. Leach*, No. 02-24-00283-CV, 2025 WL 2005513, at *11 (Tex. App.—Fort Worth July 17, 2025, no pet.) (mem. op.). And when determining an appropriate award, the trial court may examine the entire record and view the matter in light of the amount in controversy, the nature of the case, and his or her personal experience as a lawyer or judge. *Mignogna*, 2022 WL 3486234, at *17 (citing *Iola Barker v. Hurst*, 632 S.W.3d 175, 193–94 (Tex. App.—Houston [1st Dist.] 2021, no pet.)).

Here, SES challenges the reasonableness and necessity of the attorney's-fees award. In this context, sufficient evidence underpinning such an award will include evidence of "(1) particular services performed; (2) who performed those services; (3) approximately when the services were performed; (4) the reasonable amount of time required to perform the services; and (5) the reasonable hourly rate for each person performing such services." *Rohrmoos*, 578 S.W.3d at 498.

SES does not contend that the billing records were insufficiently detailed or that they had been excessively redacted. *Cf. McGibney*, 549 S.W.3d at 821 ("Some entries were so heavily redacted that the trial court could not possibly have had sufficient evidence to determine that the entire amount requested was 'not excessive or extreme, but rather moderate or fair.'" (quoting *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016))). Nor does SES take issue with the hourly rates shown on the

8

bills. It focuses rather on how much work was done after July 2024—excessive, according to SES—and on the paralegal billings, which it argues did not establish that the work was of a type traditionally done by an attorney, *see Clary Corp. v. Smith*, 949 S.W.2d 452, 469 (Tex. App.—Fort Worth 1997, pet. denied) (allowing recovery for legal-assistant time if legal assistant performed work traditionally within a lawyer's purview).

Concerning allegedly excessive legal fees, we recently addressed a similar claim in *McComb*, 2025 WL 2005513. As here, McComb (the appellant) "ha[d] not alleged that [appellee's] lodestar evidence itself [was] defective or insufficient" and "did not expressly seek a reduction from the lodestar." *Id.* at *9. Instead, McComb argued that the total hours worked were excessive compared to the (allegedly) relatively simple legal issues. After we contrasted McComb's view of the controlling caselaw with appellee's counsel's affidavit testimony explaining the work needed to apply that caselaw to the facts at hand, we summed up:

> Thus, the trial court had before it conflicting evidence regarding whether the hours-worked component of the lodestar calculation was reasonable in light of the record as a whole—[appellant's counsel's] opinion of the maximum reasonable hours that [appellee's firm] should have billed versus [appellee's counsel's] opinion of the total reasonable hours based on the lodestar evidence, as well as the attorneys' different assessments of the case's complexity. As factfinder, the trial court was entitled to resolve this conflict in [appellee's] favor.

*Id.* at *10.

Here, the trial court had before it the billing records and exhibits reflecting the parties' various communications about document production and heard the testimony of Benedick's lead counsel about the work performed through trial—testimony that was subjected to thorough cross-examination by SES. After considering the entire record, the trial court found that attorney's fees through trial of $102,964 were reasonable and necessary despite SES's implicitly rejected position that the case was essentially over in July 2024. "As factfinder, the trial court was entitled to resolve this conflict"[6] in Benedick's favor. *Id.*

So in light of the "strong presumption" arising from the billing records that the base lodestar figure is reasonable, *see Rohrmoos*, 578 S.W.3d at 502, and the absence of any countervailing evidence, we cannot say that the trial court abused its discretion with its attorney's-fees award to Benedick. *See Rohrmoos*, 578 S.W.3d at 501 (holding that "if a fee opponent seeks a reduction [from the base lodestar amount], it bears the burden of providing specific evidence to overcome the presumptive reasonableness of the base lodestar figure"); *see also Darrigan v. Am. Prospect, Inc.*, No. 02-24-00061-CV, 2025 WL 2423579, at *18 (Tex. App.—Fort Worth Aug. 21, 2025, no pet.) (mem. op.) (noting that "no abuse of discretion occurs when the trial court decides based on conflicting evidence, so long as some substantive and probative evidence supports its decision"). We overrule that part of SES's sole issue.

---

[6]To say that a "conflict" existed might overstate the situation, since SES offered no controverting attorney's-fees evidence.

Concerning the $19,204.50 in paralegal time that was subsumed within the overall award, an adequate supporting record must show

- the paralegal's qualifications to perform substantive legal work;

- that the paralegal performed substantive legal work under an attorney's direction and supervision;

- the nature of the legal work performed;

- the paralegal's hourly rate; and

- the number of hours expended by the paralegal.

*El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 763 (Tex. 2012) (contrasting listed factors with attorneys' unsupported affidavit statements that "'[l]egal assistant time was necessarily expended in the prosecution of [the] case,'" where "no evidence was offered to describe the tasks their legal assistants performed, who performed these services, or their qualifications"); *All Seasons Window and Door Mfg., Inc. v. Red Dot Corp.*, 181 S.W.3d 490, 504 (Tex. App.—Texarkana 2005, no pet.) (reducing fee award where "there was no evidence concerning the legal assistants other than the hourly rate and number of hours expended"); *Clary Corp.*, 949 S.W.2d at 469–70 (holding evidence of legal-assistant fees legally insufficient where attorney "did not explain how [legal assistant] was qualified to participate in document production, or even that she was qualified at all"; attorney testified about total amount of legal-assistant fees but "did not state what [assistant's] hourly rate was or give the number of hours she

worked on the case" and "did not submit any billing statements detailing [her] work expended or the time involved").

Here, SES argues narrowly that Benedick's counsel "did not testify as to the work performed by the paralegals as being work traditionally performed by an attorney." Without pointing to where in the billing records we might find specific dates, timekeepers, or amounts incurred with which it takes issue, SES complains generally of work on "such tasks as diary entries, preparing notebooks, communications with the court reporter and videographer, preparing binders, preparing redactions on documents, labeling documents, going to the Court to test Court electronic systems, and preparing cover letters," labeling them—*ipse dixit*-style—"certainly not tasks traditionally performed by attorneys."[7]

We're not sure that SES's assertion is altogether self-evident. Regardless, Benedick's counsel testified about each paralegal's qualifications and hourly billing rates, explained that he directly oversaw their work, and proved up billing records that had detailed time entries for every legal professional who worked on the case. Counsel also testified about reductions to billings for fees for unrelated services, which included paralegal time, as well as about time not billed.

---

[7]The footnote in SES's brief appearing at the end of that last phrase cites to Benedick's fee statements in their entirety—some 30 pages' worth—without directing us to anything in particular.

SES did not complain in the trial court that some of the paralegal billings were for non-attorney-equivalent services. *Cf., e.g.*, *Toledo v. KBMT Operating Co., LLC*, 581 S.W.3d 324, 333 (Tex. App.—Beaumont 2019, pet. denied) (holding abuse of discretion where trial court failed to apply lodestar method and noting, "When [plaintiff–appellant] was before the trial court, she identified many items in the firm's invoices that reflected duplicative, excessive, or inadequately documented work. Yet the trial court failed to reduce or eliminate any of them in its award."). "[A]lthough we must review the record to determine whether the award is supported by the evidence, we are not obligated to conduct a line-by-line assessment to determine whether some arbitrary combination of disputed time entries happens to reasonably correspond to the trial court's award." *Davis v. Crawford*, 700 S.W.3d 438, 454 n.10 (Tex. App.—Eastland 2024, no pet.). Viewing the record as a whole, including Benedick's counsel's testimony about the lodestar and the reasonableness and necessity of the fees sought, we conclude that the trial court had before it legally and factually sufficient evidence to support including the paralegals' billings within the overall attorney's-fees award and did not abuse its discretion in that regard. We overrule this remaining aspect of SES's issue on appeal.

## IV.    Conclusion

Having overruled SES's sole issue, we affirm the trial court's judgment.

13

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: January 15, 2026