

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00572-CV

_____

TEXAS HEALTH HARRIS METHODIST HOSPITAL FORT WORTH, Appellant

V.

STEPHEN FEATHERLY, Appellee

On Appeal from County Court at Law No. 3
Tarrant County, Texas
Trial Court No. 2016-003319-3

Before Sudderth, C.J.; Birdwell and Bassel, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

## I. Introduction

Appellant Texas Health Harris Methodist Hospital Fort Worth (the Hospital) appeals following a trial on remand in which a jury found that the reasonable and regular rate for the services that the Hospital had provided to Appellee Stephen Featherly on March 13, 2014[1] was $18,559.25.[2] The trial court declared that the Hospital's lien of $24,682 exceeded the reasonable and regular rate determined by the jury and awarded Featherly $196,166 in attorney's fees, plus various post-trial attorney's fees.

In two points, the Hospital argues that the trial court abused its discretion by awarding Featherly $196,166 in attorney's fees on his claim under the Uniform Declaratory Judgment Act (UDJA) and by failing to award the Hospital attorney's fees for defending against Featherly's declaratory-judgment claim. The Hospital primarily hinges its attack on a proposition that on the surface is concerning: the amount of fees awarded to Featherly is so grossly disproportionate to the amount by which he reduced the Hospital's claim that the fee award must be unreasonable. But the trial court's fee award was an exercise of its discretion. Balanced against the disproportion

---

[1]This is not a typographical error. As explained in the background section that follows, the personal injury underlying the medical charges at issue occurred over eleven years ago, and the declaratory-judgment suit was filed in 2016.

[2]The jury also found that the value of the March 13, 2014 medical services provided to Featherly was $13,575.10, but that was not the basis of the trial court's judgment.

2

of the fee award is the trial court's careful consideration of what produced the imbalance. As discussed in more detail below, the trial court considered uncontroverted and unobjected-to testimony that the Hospital had budgeted and had then spent an amount to fight Featherly's claim that matched the amount that Featherly eventually spent. This, in combination with other evidence, supported the view that the Hospital was litigating this particular lien to establish a broader precedent that would aid it in future cases involving a challenge to its charges, rather than the view that this was simply a one-time dispute over a medical bill. Indeed, the record of the trial court's questioning shows that it was unpersuaded by the Hospital's tactic of criticizing Featherly for the fees that he had incurred to respond to the Hospital's all-hands-on-deck litigation strategy—a strategy that the Hospital wanted the trial court to disregard when it bore ill consequences. But the trial court in its discretion decided to consider how the strategy impacted the dynamics of the attorney's fees; in this unique circumstance, the trial court's fee decision was neither principle-less nor irrational.

Thus, because the trial court is given discretion to award attorney's fees in a declaratory-judgment suit, we conclude that the trial court did not abuse its discretion by deciding to award Featherly his fees but not award the Hospital its fees. But because there is legally insufficient evidence to support the legal-assistant fees that were included in one attorney's billing statements and because the amount claimed in that attorney's affidavit does not match the total of the billing statements, we modify

3

the judgment to delete $9,056—the total of the presumed legal-assistant fees of $6,101.50 and the $2,954.50 difference between the amount claimed in the attorney's affidavit and the total fees shown in the billing invoices—from the fees awarded to one attorney. As modified, we affirm the judgment.

## II. Background

### A. The Accident, the Lien, and the First Trial[3]

On March 13, 2014, Featherly was injured in a motor-vehicle accident. He was transported to the Hospital for treatment. After signing an admission acknowledgment and consent form confirming his agreement to pay for any treatment to be provided, Featherly was treated in the emergency room for roughly three and a half hours before he asked to be discharged.

Shortly thereafter, the Hospital's billing department sent Featherly a patient-account statement, dated March 20, 2014, seeking payment in the amount of $13,575.10 for the medical care rendered in its emergency room. The statement identified Featherly as a "self-pay" patient and credited him with an uninsured discount/adjustment of $11,106.90 against the total charges of $24,682.00, resulting in the $13,575.10 account balance. The statement indicated that the deadline for payment was April 7, 2014.

---

[3]For this subsection, we borrow from the background set forth in our prior opinion but cite to it here at the outset instead of throughout this subsection. *See Tex. Health Harris Methodist Hosp. Fort Worth v. Featherly*, 648 S.W.3d 556, 561–65 (Tex. App.—Fort Worth 2022, pets. denied).

4

On April 1, 2014, the Hospital's legal department received a letter from attorney James Jinks, who stated that he and his law firm represented Featherly for injuries sustained. The letter enclosed a HIPAA-compliant medical authorization executed by Featherly and requested "a copy of an itemized billing statement for services" rendered as a result of the accident on March 13, 2014.

The Hospital's billing department thereafter sent Featherly a second statement, dated April 14, 2014, seeking past-due payment of the original adjusted account balance of $13,575.10. Neither this statement nor the original statement that was sent to Featherly personally itemized the individual charges for the services rendered.

Subsequently, the Hospital forwarded to Jinks two sworn affidavits of billing records, dated May 8, 2014, and June 5, 2014, respectively. Each affidavit attested to an account balance for services rendered in the "full amount" of $24,682.00, and each attached a "Patient Account Summary" and either an itemized statement or computer printout of the charges and codes for the individual services rendered. The affidavits further attested that "[t]he service(s) provided were necessary and the amount charged for the service(s) was reasonable at the time and place that the service(s) were provided." In this manner, the affidavits met the admissibility requirements of Section 18.001 of the Texas Civil Practice and Remedies Code, which provides for civil actions asserting claims for personal injuries:

> Unless a controverting affidavit is served as provided by this section, an affidavit that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service

5

> was necessary is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary.

Tex. Civ. Prac. & Rem. Code Ann. § 18.001(b) (setting forth admissibility requirements).

With the Hospital newly aware of the possibility that Featherly could obtain a judgment or settlement for damages arising out of the underlying accident, on May 9, 2014, the Hospital filed a statutory hospital lien with the county clerk of Tarrant County. *See* Tex. Prop. Code Ann. § 55.002(a) ("A hospital has a lien on a cause of action or claim of an individual who receives hospital services for injuries caused by an accident that is attributed to the negligence of another person."). The lien did not specify an amount due. *See id.* § 55.005(b) (providing that the notice filed need only contain the injured individual's name and address, the date of the accident, the name and location of the hospital claiming the lien, and the name of the person alleged to be liable for damages arising from the injury, if known). Once it filed the executed lien, the Hospital faxed a copy of it to Jinks.

After filing its lien, the Hospital sent three additional statements to Featherly dated May 15, June 15, and July 25, 2015. The amount due reflected on each of these statements was $24,682.00; they no longer reflected an uninsured discount/adjustment. The Hospital explained that this was due to the possibility of Featherly's recovery of damages against a negligent third party, thereby rendering him "insured" for purposes of payment.

6

On August 20, 2015, Jinks filed a personal-injury lawsuit on Featherly's behalf against the driver of the other vehicle involved in the accident, Jennifer Rose Applebaum. In addition to alleging a negligence cause of action, the original petition sought damages including "reasonable expenses for necessary health care, including rehabilitative services and devices, resulting from the injuries he sustained in the occurrence in question." More specifically, the petition alleged that Featherly had "incurred $149,481.75 in past medical expenses."

On October 19, 2015, Featherly responded to an interrogatory propounded by Applebaum seeking the specific amounts "of any and all hospital, doctor, medical[,] or pharmaceutical expenses" that he claimed to have incurred because of the underlying accident. His sworn response identified fifteen health care providers, including the Hospital, and enumerated the charges for all fifteen, including $24,682.00 for the Hospital, with the cumulative amount incurred of $159,367.33. On January 27, 2016, Jinks responded to a request for disclosure of the amount and method of calculating Featherly's economic damages by identifying the same providers and enumerating the same individual and cumulative amounts charged. *See* Tex. R. Civ. P. 194.2(d).

On March 2, 2016, Featherly executed a "Confidential Settlement Agreement and Release" with Applebaum whereby he agreed to accept a certain amount in full and final settlement of his cause of action against her and, upon payment of this amount, to fully release and discharge her from any further liability arising from the underlying accident.

7

To effectuate the settlement, on March 4, 2016, the claims adjuster for Applebaum's liability insurer sent her defense attorney a check payable to "STEPHEN FEATHERLY & JAMES JINKS AND COURT CLERK FOR THE BE[NEFIT] OF HARRIS METHODIST FORT[ ] WORTH" in the amount of $24,682.00, the same amount the Hospital had claimed since first contacted by Jinks on behalf of Featherly and the same amount asserted by Featherly and Jinks as reasonable and necessary charges by way of Featherly's pleadings and discovery responses.

On March 10, 2016, Featherly and Applebaum filed a joint motion in the trial court seeking dismissal of the lawsuit in its entirety with prejudice. The next day, March 11, 2016, the trial court signed an Agreed Order of Dismissal with Prejudice granting the relief jointly requested.

On April 14, 2016, the claims adjuster for Applebaum's liability insurer sent Jinks another check payable to "DISTRICT CLERK OF TARRANT COUNTY FOR THE BENEFIT OF HARRIS METHODIST FORT [WORTH,] STEPHEN FEATHERLY, & HIS ATTORNEY, JAMES [JINKS]" in the same amount of $24,682.00.

On May 24, 2016, Featherly filed this lawsuit against the Hospital and Texas Health Huguley, Inc. (Huguley) seeking a declaratory judgment that the liens filed by both hospitals were invalid because the amounts charged for the services each rendered exceeded "a reasonable and regular rate" for hospital and emergency medical

8

services, citing Texas Property Code Section 55.004(d)(1), (g)(1).[4]  *See* Tex. Prop. Code Ann. § 55.004(d)(1), (g)(1); *see also Daughters of Charity Health Servs. of Waco v. Linnstaedter*, 226 S.W.3d 409, 411 (Tex. 2007) (confirming that the amount of a hospital lien cannot exceed a reasonable and regular rate).  As to the Hospital, the original petition asserted that an independent audit that Featherly commissioned had determined that the $24,682.00 charge exceeded the reasonable and regular rates for its services.  On this basis, the prayer for relief sought a declaration that the Hospital's lien was invalid and sought attorney's fees and court costs for obtaining such relief.

On June 6, 2016, the claims adjuster for Applebaum's liability insurer sent yet another check to Jinks, this one made payable to "STEPHEN FEATHERLY AND HIS ATTORNEY JAMES A JINKS" in the exact amount for which the new lawsuit sought a declaration of invalidity for the Hospital's lien due to its exceeding reasonable and regular rates.

On June 30, 2016, the Hospital filed a general denial.  On September 29, 2016, the Hospital filed an amended answer adding to its general denial the affirmative defenses of waiver, equitable estoppel, and quasi-estoppel, asserting that Featherly should be precluded from contesting the reasonableness and regularity of the rates charged for its emergency-room services given his use of the full charges to negotiate the settlement agreement in the underlying personal-injury lawsuit.

---

[4]Featherly later agreed to dismiss his declaratory-judgment action against Huguley with prejudice.

9

On February 21, 2017, the Hospital filed a counterclaim for the full $24,682.00 charged for its services, asserting breach of contract and unjust enrichment as theories of liability. The Hospital again cited Featherly's reliance on that amount as the basis for his personal-injury cause of action and the foundation of the amount that he eventually obtained in settlement thereof. Featherly thereafter filed a general denial and further specifically pleaded that, due to his injuries, he lacked the capacity to execute the contract for services with the Hospital and that the Hospital committed fraud in charging for its services.

On July 6, 2018, the Hospital amended its counterclaim to add the theories of quantum meruit and money had and received. Featherly responded with an amended answer asserting that the Hospital's unclean hands foreclosed any recovery under the Hospital's equitable theories of recovery. On November 2, 2018, the Hospital amended its counterclaim to assert that, even if Featherly had initially lacked the capacity to execute the admission acknowledgment and consent form, he subsequently ratified the contract by adopting the full amount billed therefor as the basis for the litigation and settlement of his personal-injury cause of action against Applebaum.

Called to trial on November 12, 2018, the parties submitted their proposed jury questions and instructions and agreed to reserve their claims for attorney's fees for adjudication by the trial court post-verdict. Before and during trial, the Hospital sought to prove its ratification defense by offering a demand letter, the discovery

responses, the settlement agreement, the joint motion to dismiss, and the order of dismissal with prejudice in the underlying negligence action against Applebaum. The Hospital argued that in each of these documents, Featherly ratified the contract for hospital services by urging $24,682.00 as the reasonable and necessary amount that he had incurred for those services as compensable damages resulting from Applebaum's negligence. The trial court excluded each of these exhibits as irrelevant.

The trial court submitted its charge to the jury. As an initial matter, and separate and distinct from the subsequent liability questions, the court's charge asked the following question concerning the validity of the Hospital's lien: "What was a 'reasonable and regular rate' for the hospital services provided to [Featherly] by [the Hospital] on March 13, 2014[?]" The charge then conditioned the breach-of-contract liability and damages questions upon a negative answer to a question asking whether Featherly lacked the mental capacity to contract for the hospital care that he had received—effectively an affirmative finding of mental incapacity. The trial court refused to submit ratification as an alternative basis for contract formation in the event of an affirmative incapacity answer.[5] The charge did, however, submit a liability

---

[5]The Hospital tendered the following question and instruction on ratification:

Did [Featherly] ratify an agreement with [the Hospital] to pay the "full billed charges" for the goods and services provided to him during his admission to [the Hospital]'s emergency department and to "irrevocably assign" to [the Hospital] his interest in a recovery from a third-party liability policy up to the amount of [the Hospital]'s charges?

11

question with instruction and a damages question on the Hospital's quantum meruit theory of recovery.

Addressing the validity of the Hospital's lien, the jury eventually found that the reasonable and regular rate for the Hospital's services to Featherly was $13,575.10, the exact amount originally calculated by the Hospital's applying its uninsured discount. The jury also found that, due to Featherly's injuries in the wreck, he lacked the mental capacity to contract when he signed the admission acknowledgment and consent form at the Hospital. Because this negative response foreclosed any consideration of the Hospital's breach-of-contract theory of recovery, the jury did not answer those questions. Nevertheless, on the Hospital's alternative quantum meruit theory of recovery, the jury found that the Hospital had rendered compensable services to Featherly for which it was entitled to compensation in the amount of $13,575.10.[6]

---

A person ratifies an agreement if he recognizes the validity of the agreement by acting or performing under the agreement or by otherwise affirmatively acknowledging the agreement. In other words, if a person by his conduct recognizes an agreement as valid, having knowledge of all relevant facts, he ratifies the agreement. Any act inconsistent with an intent to avoid being bound by an agreement has the effect of ratifying the agreement.

[6]The charge instructed the jury to "proceed" to consider and answer the quantum meruit questions if it found Featherly lacked the requisite mental capacity to contract but later instructed the jurors to answer the quantum meruit questions only if they previously found Featherly had the mental capacity to contract but did not actually agree to a contract with the Hospital. The jury apparently followed the first instruction and ignored the second in answering the quantum meruit questions.

12

After trial, the parties submitted competing motions for judgment, including briefing and affidavits on their respective attorney's fees, with Featherly urging the trial court to disregard the jury's quantum meruit findings because the finding of mental incapacity conclusively negated any finding that he had "accepted, used[,] and benefited from" the Hospital's services or that he was "reasonably notified" that the Hospital expected to be compensated for its services. On May 10, 2019, the trial court signed a final judgment granting Featherly declaratory-judgment relief in the following particulars:

> The lien filed on May 9, 2014[,] by Texas Health Harris Methodist Hospital Fort Worth for the [H]ospital's charges for services provided to [Featherly] on March 13, 2014[,] alleged the amount of $24,682.00 due, but is invalid as to the amount of $11,106.90. This amount was found by the jury to exceed a reasonable and regular rate for the hospital services provided to [Featherly] by [the Hospital] on March 13, 2014. The lien is valid for the remaining $13,575.10, the amount determined by the jury to be a reasonable and regular rate for the hospital services provided to [Featherly] by [the Hospital] on March 13, 2014.

The trial court awarded Featherly $88,715.01 in attorney's fees on his declaratory-judgment claim. But the trial court disregarded the jury's verdict on the Hospital's quantum meruit theory of recovery and rendered a take-nothing judgment against the Hospital on each of its counterclaims. In so doing, the final judgment paradoxically declared the validity of the Hospital's lien in the amount of $13,575.10 but invalidated the underlying debt secured by the lien. *See Linnstaedter*, 226 S.W.3d at 411 ("A lien is part and parcel of the underlying claim, the former existing only because of the latter.").

13

The Hospital subsequently appealed, and Featherly cross-appealed.

## B.    The Result of the First Appeal

In Featherly's appeal, he contended that the entirety of the lien should have been declared invalid—despite the jury's finding that $13,575.10 represented the reasonable and regular rate for the services rendered to him—because he was never "admitted" as an inpatient to the Hospital as required by Texas Property Code Section 55.002(a). *See* Tex. Prop. Code Ann. § 55.002(a); *Featherly*, 648 S.W.3d at 565. After performing a detailed statutory analysis, we concluded that (1) because Featherly was allowed entry and access to the Hospital's emergency room for treatment, he was "admitted" to the Hospital for purposes of the hospital-lien statute and (2) his unilateral decision to forgo further "emergency hospital care services" did not remove the charges that he reasonably and necessarily incurred thereby from the application of the statute. *Featherly*, 648 S.W.3d at 576. Accordingly, we overruled Featherly's issue arguing to the contrary. *Id.*

In the Hospital's appeal, we reviewed the trial court's exclusion of evidence that the Hospital sought to introduce to support its ratification defense. *Id.* At trial, the Hospital proffered responses to an interrogatory and a request for disclosure from Featherly's personal-injury suit in which he stated that he had "incurred" $24,682 in medical expenses at the Hospital. *Id.* at 579. The Hospital argued that, both singularly and cumulatively, these documents demonstrated that Featherly had ratified the contract for hospital services by urging $24,682 as the reasonable and necessary

14

amount that he had incurred for those services as compensable damages resulting from Applebaum's negligence. *Id.* at 565. We concluded that the evidence was relevant to the Hospital's theory that Featherly had ratified the contract and that the error in excluding such evidence was harmful. *Id.* at 579, 581. Accordingly, we sustained the Hospital's fourth point and remanded for a new trial. *Id.* at 582.

Our prior opinion also addressed the Hospital's challenge to the trial court's fee award to Featherly. *Id.* at 584. At its core, the Hospital argued that Featherly could not recoup attorney's fees because the hospital-lien statute does not provide for attorney's fees and that Featherly should not be allowed to recast his Chapter 55 hospital-lien challenge as a declaratory action in an effort to obtain attorney's fees. *Id.* We noted that Featherly had pleaded only a claim for declaratory relief and no other causes of action; thus, there was no other fee-ineligible claim for the declaratory claim to mirror. *Id.* We explained that "Chapter 55 of the [P]roperty [C]ode does not appear to contain a clear expression of intent, either express or implied, to grant litigants a private cause of action to challenge hospital liens," and thus it was "doubtful whether there was any cause of action under the hospital lien statute for Featherly's declaratory claim to mimic." *Id.* at 585. Accordingly, we held that Featherly's attorney's fees were not precluded, but we did not reach the Hospital's challenges to the amount of attorney's fees because "[a]t th[at] juncture, before a new trial, any opinion on that argument would [have] be[en] advisory." *Id.* at 585 & n.29.

15

## C.     The New Filings and the New Trial

We issued mandate on February 21, 2023, and six months later, the trial court signed an order setting the trial for the week of January 22, 2024.

On December 20, 2023, the Hospital filed its third amended counterclaim, alleging breach of contract, unjust enrichment, quantum meruit, and money had and received and requesting attorney's fees.

On January 10, 2024, the Hospital filed its fourth amended counterclaim, reasserting its claims for breach of contract, unjust enrichment, quantum meruit, and money had and received; setting forth a paragraph on offset; and requesting attorney's fees.

One week later (or six days before trial), Featherly filed his first amended petition for declaratory judgment. Featherly sought to have the trial court (1) declare the Hospital's lien invalid as to the amount that it exceeds the reasonable and regular rate and (2) order the Hospital to pay his attorney's fees and court costs. Featherly also filed an answer to the Hospital's fourth amended counterclaim.

Because the Hospital does not challenge the reasonable and regular rate found by the jury, we need not detail the testimony from the second jury trial. Featherly's expert opined that the reasonable and regular rate for the services Featherly received was $7,372.42. As noted in this opinion's introduction, the jury found in the second trial that $18,559.25 was a reasonable and regular rate for the March 13, 2014 hospital

16

services provided to Featherly. The parties agreed to try the issue of attorney's fees to the court.

### D. The Attorney's Fees Hearing and the Judgment

Approximately six months after the second trial, Featherly moved for entry of final judgment. Among the items that Featherly attached to the motion were documents related to attorney's fees, including (1) the affidavit of James A. Jinks detailing his experience, (2) Jinks's time sheets, (3) the affidavit of Thomas M. Michel detailing his experience and request for post-trial fees, (4) Michel's curriculum vitae, and (5) Michel's time sheets and billing statements.[7]

The Hospital filed a combined motion for entry of judgment, request for attorney's fees, and response to Featherly's motion for entry of final judgment. The Hospital argued that the trial court should deny Featherly's request for attorney's fees because the fees sought were not reasonable given the amount in dispute and the result obtained and because an award of fees to Featherly would not be equitable and just. The Hospital further argued that the trial court should award the Hospital its quantum meruit damages and attorney's fees, should enter judgment for the Hospital on its counterclaim, and should enter judgment for the Hospital on its attorney's fees incurred in connection with the claim for implied contract. The Hospital attached various documents to its combined motion, including the "Affidavit of Greg S. Gober

---

[7]Five days before the hearing on the motions to enter judgment, Featherly filed a first amended motion for entry of final judgment stating that he was submitting Jinks's and Michel's affidavits for consideration on the award of attorney's fees.

for Award of Attorneys' Fees," his curriculum vitae, and invoices showing the time spent on various tasks and requesting $197,949.50 in attorney's fees plus various amounts for post-trial attorney's fees.

Four days before the hearing on the motions to enter judgment, the Hospital filed an objection to an award of attorney's fees to Featherly for fees incurred before January 17, 2024. The Hospital argued that "Featherly [had] spent well over six years pursuing a claim seeking to void the Hospital's lien entirely rather than limit it to a reasonable rate" and that "Featherly [had] not prevail[ed] on his claim to have the Hospital['s] lien declared void." The Hospital thus objected to an award of any attorney's fees incurred before January 17, 2024, in pursuit of Featherly's failed efforts to have the Hospital's lien declared invalid, void, or of no force or effect.

At the hearing on the motions to enter judgment, Featherly took the position that the Hospital was at fault for driving up the attorney's fees because Featherly's multiple attempts to settle the Hospital's charges for an amount lower than $24,682 were met with silence. Featherly argued that he had maintained the declaratory-judgment action because "invalidating the lien is the only way to get an arm's length negotiation with the [H]ospital over the amount."

The Hospital's stance was that Featherly had received the full $24,682 in his personal-injury settlement and then had sat on it, contending for six and a half years that he owed only $7,000. The Hospital stated that the case could not be settled

18

because of the attorney's fees.[8]  The Hospital argued that Featherly should not be awarded attorney's fees because the reasonable and regular rate found by the jury ($18,559.25) was two and a half times the approximately $7,000[9] that Featherly had suggested but was 75% of the amount that the Hospital had suggested.  The Hospital detailed cases stating that "[t]he most critical factor in determining reasonableness of a fee award is the degree of success obtained" and argued that the Texas Supreme Court did not allow an appellate court to award $62,000 in uncontroverted attorney's fees when the plaintiff had sought damages of $200,000 but was awarded only $65,000 when the jury had awarded no fees.[10]  The Hospital further argued that suits cannot be maintained solely for attorney's fees and that it would not be equitable to award $200,000 in attorney's fees for getting Featherly an approximately $6,000 benefit (i.e., a reasonable and regular rate of $18,559.25 instead of $24,682).  The Hospital noted that, due to Featherly's fee agreement, any award of attorney's fees would not go to Featherly but would solely go to his attorneys and stated that he had

---

[8]Featherly's attorney agreed that the case "has been about attorney fees," specifically that "Mr. Featherly doesn't want to pay [the Hospital's] attorney fees."

[9]Some places in the record refer to $7,700 and $7,372.

[10]*See Smith v. Patrick W.Y. Tam Tr.*, 296 S.W.3d 545, 548 (Tex. 2009).

gotten all he wanted in his personal-injury suit.[11] The Hospital asked for $197,949.50 in attorney's fees for defending against Featherly's declaratory-judgment action.

Without being asked, the Hospital addressed how its fees of almost $200,000 were not disproportionate in light of its argument that Featherly's fees in that same amount were unreasonable. The Hospital explained that it "didn't ask to be here" and that it "didn't start the fight" but was instead served and forced to come to court to defend itself. The Hospital further explained that it was entitled to attorney's fees because it had "achieved a pretty favorable result for the client" by getting 75% of the amount that it had asked the jury for and was therefore the prevailing party.

Featherly responded that "[r]easonable is reasonable" and that if the Hospital's fees of $197,000 are reasonable, then Featherly's fees are also reasonable. Featherly further argued,

> I don't think it's an understatement or an overstatement to say it's really a David versus Goliath method, and [the Hospital] really did do a scorched earth on Mr. Featherly because they sued him for breach of contract and all these other fees. They didn't say, oh, this is just some little innocent dispute about the real customary, ordinary rates. No. They went full bore, spent $200,000 against this guy who's a welder, and filed how many counterclaims against him and affirmative defenses, all on this $24,000 lien that they don't take the ordinary steps [to settle] as another hospital [did]. And this case took the exact -- and then they've been gone for seven years. So [the Hospital] could have been out of this thing years ago. They chose not to. They chose to make Stephen Featherly, for I don't know what reason, an example.

---

[11]Jinks acknowledged at the hearing that "if there's a recovery of attorney fees that [Featherly] owes me, then guess what? I get reimbursed for my attorney fees. It doesn't go into Mr. Featherly's pocket."

20

Featherly used this argument—"the size of the party on the other side" and "the efforts they went to" in order "to pursue this [$]24,682 amount"—to support his contention that his attorney's fees were "equitable and just."

The trial court asked Jinks about his fee request of $90,900, and he opined that his trial fees are "extremely reasonable" and "probably represent[ed] about 70 percent" of the time that he had actually spent on the case. Michel explained that his fees of $105,266 included the prior appeal and that he believed that Featherly had prevailed in the prior appeal, despite that the trial court did not think so.

The trial court asked the Hospital to clarify its position on the reasonableness of fees that exceed a hospital lien:

> THE COURT: . . . [A]nytime someone exercises [his or her] right under the declaratory[-]judgment action to challenge a hospital lien, it's your position that as soon as somebody -- as soon as the hospital has fought up to the amount of the lien that was charged, anything after that becomes unreasonable[?]
>
> [THE HOSPITAL'S COUNSEL]: I think that would be consistent with the [c]ourt[s'] opinions and the Supreme Court opinions that I cited to. I mean --
>
> THE COURT: So basically --
>
> [THE HOSPITAL'S COUNSEL]: -- we can't spend hundreds of thousands of dollars[,] and we shouldn't spend hundreds of thousands of dollars arguing over [$]25,000. And we weren't the ones who brought the lawsuit, like I said.

The trial court pointed out that it did not see anything in the record and that there had been no testimony regarding any counteroffer from the Hospital after

21

Featherly had sent a request for $12,000. The Hospital's counsel's recollection was that Featherly had offered to pay only $7,372 "period." The trial court noted how that played out:

> THE COURT: And your response to him was --
>
> [THE HOSPITAL'S COUNSEL]: My response is --
>
> THE COURT: -- we'll take our [$]24,000.
>
> [THE HOSPITAL'S COUNSEL]: We are --
>
> THE COURT: So that means your response was basically, sue us --
>
> [THE HOSPITAL'S COUNSEL]: We've got to talk.
>
> THE COURT: -- and we're going to run up attorney's fees and once they exceed -- once you spend more than $24,000 in attorney's fees, you're being unreasonable even though we were the ones that have never made an offer and never resolved -- this is the difficulty I'm having with the "equitable" word. And I understand the Supreme Court saying -- you know, yeah, I mean, I don't think there's anybody in this room that would say it's unreasonable [sic] to spend $90,000 on $24,000 in an amount of controversy. I understand that.
>
> However, when you're forced into the only way you can get relief is to file a declaratory[-]judgment action because the Property Code Chapter 55 doesn't have, you know, an arbitration clause, I don't know, then he's left with either no remedy or, like I say, he can only fight until he gets to a certain level and then he has to go, now I have to send them a check because even if I win, I'm not going to get more than the amount that's at stake.
>
> I just -- I -- that doesn't sound equitable to me at all.

The Hospital's counsel responded that this was like any other lawsuit in which an attorney calculates the reasonable amount of time and effort to put into a case to

22

achieve the desired result, acknowledging that an attorney would "put a lot more effort into a $7 million case where someone has been incapacitated entirely than . . . a $30,000 car wreck."

The trial court opined that it was "completely disingenuous" for the Hospital to say that it is inequitable for Jinks to file suit and fight on Featherly's behalf but that it is not inequitable for the Hospital to defend the suit and then ask for $200,000 in fees. The trial court asked about the reasonableness of Featherly's fees, and Michel argued that the fees were reasonable for the services that were rendered (namely, they had to respond to four amended counterclaims) and that the services were necessary because this was "our only avenue."[12]

Jinks pointed out that Huguley had settled for $1,000 and opined that the main reason that Huguley had settled was because the Hospital had a $200,000 budget to defend this case:[13]

> But I think the main reason why [Huguley's lawyer] wanted out is because he heard about the [Hospital's] $200,000 budget. And knowing lawyers like we know lawyers, if you give a lawyer a $200,000 budget, don't be shocked and surprised when, guess what? They use up the

---

[12]The Hospital clarified that it never took the position that Featherly could not bring a lawsuit—only whether it should have been a declaratory-judgment action or one filed under Texas Property Code Chapter 55. As noted above, we concluded in our prior opinion that Chapter 55 does not appear to contain a clear expression of intent to grant litigants a private cause of action to challenge hospital liens, and thus Featherly's declaratory action was a proper vehicle to do so. *Featherly*, 648 S.W.3d at 585.

[13]The Hospital did not controvert Jinks's statement regarding the amount of its budget.

23

$200,000 budget in a case. So to me, that goes to the equitable and just, what's fair. And . . . they're letting you know that that's the heavy hand that they're dealing with, right?

At the conclusion of the hearing, the trial court stated,

With regard to the attorney's fees, I'm going to have to do the math, too. I'm just going to tell you, I think that the degree of success obtained -- and I buy into Mr. Michel's argument is they had to -- you had to fight basically for everybody that ever has a hospital lien since Chapter 55 didn't provide it to prove that there was a -- it was proper to bring a declaratory[-]judgment action.

In addition, as I said before, it seems completely inequitable to me to allow one party to the litigation to drive up the cost[,] and then once it gets to a certain point, say, nobody gets any more attorney's fees. We happen to be in a better position to absorb $1[9]0,000 of attorney's fees than you do, and so you shouldn't be entitled to them even though we spent them and that's why we got where we are.

So I think it is reasonable. I think clearly it was necessary, certainly just and equitable for [Featherly] to recover the $90,900 in attorney's fees expended in the trial court.

With regard to the appellate court, I -- again, even if it's just the last paragraph of the opinion,[14] I think Justice Birdwell sets forth that this was the only way to get it done and that was as a result of Mr. Michel's work. So I'm going to grant [Featherly] $105,266 in appellate fees[ for the first appeal].

Of course, [Featherly] will be entitled to recover court costs and post-judgment interest at 8.5 percent per annum.

. . . .

. . . I also would grant the appellate fees as set forth by Mr. Michel in his affidavit.

---

[14]*See Featherly*, 648 S.W.3d at 585.

24

The trial court thereafter signed a final judgment reflecting the above pronouncements. This appeal followed.

## III. Discussion

In its first point, the Hospital argues that the trial court abused its discretion by awarding Featherly $196,166 for his attorney's fees on his declaratory-judgment claim. In its second point, the Hospital argues that the trial court abused its discretion by failing to award the Hospital its attorney's fees in defending against Featherly's declaratory-judgment action. After setting forth the discretionary standard of review and reviewing the record, we cannot say that the trial court abused its discretion in deciding to award attorney's fees to Featherly but not to the Hospital, but because there is insufficient evidence to support part of the fees, we adjust the trial court's award.

### A.     Standard of Review and Applicable Law

The UDJA provides that "[i]n any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009. We have recently set out the overarching standards that govern the trial court's decision to award fees under the UDJA:

> In "any proceeding" under the UDJA, "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009. The UDJA "entrusts attorney fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which

25

are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). In a declaratory[-]judgment case, we review a trial court's award of attorney's fees for an abuse of discretion. *Id.* It is an abuse of discretion for a trial court to rule arbitrarily, unreasonably, or without regard to guiding legal principles. *Id.*

To determine whether evidence is sufficient to support the trial court's exercise of discretion, we consider (1) whether the trial court had sufficient information upon which to exercise its discretion, to which we apply the legal[-] and factual[-]sufficiency standards of review, and (2) whether the trial court erred in its application of that discretion, i.e., whether, based on the evidence before it, the trial court made a reasonable decision. *Jones-Hospod v. Maples*, No. 03-20-00407-CV, 2021 WL 3883884, at *6 (Tex. App.—Austin Aug. 31, 2021, pet. denied) (mem. op.). A trial court does not abuse its discretion when its ruling is based on conflicting evidence and [when] some evidence of substantive and probative character supports its decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009).

*Callaway, Tr. of Edgar Pagett Callaway Revocable Living Tr. v. Pigg by & Through Pigg*, No. 02-24-00315-CV, 2025 WL 1909338, at *31 (Tex. App.—Fort Worth July 10, 2025, pet. filed) (mem. op.) (quoting *Comm'rs Ct. of Wise Cnty. v. Mastropiero*, No. 02-22-00383-CV, 2023 WL 3017941, at *4 (Tex. App.—Fort Worth Apr. 20, 2023, no pet.) (mem. op.)); *see also Allstate Ins. Co. v. Irwin*, 627 S.W.3d 263, 271 (Tex. 2021) ("[The] UDJA does not require an award of attorney's fees to anyone; rather, it 'entrusts attorney fee awards to the trial court's sound discretion.'" (quoting *Bocquet*, 927 S.W.2d at 21)). "The trial court is not required to award attorney's fees to the prevailing party in a declaratory-judgment action and may even award attorney's fees to the non[]prevailing party." *Uptown Cars, Inc. v. Newcastle Mgmt. Tr.*, 715 S.W.3d 825, 846 (Tex. App.—Austin 2024, no pet.) (op. on reh'g).

26

A fee claim under the UDJA is governed by the Texas Supreme Court's guiding authority that requires initial proof of a lodestar.

> Proof of fee awards under the [UDJA] is governed by the principles laid out in *Rohrmoos Venture*[ *v. UTSW DVA Healthcare, LLP,*] 578 S.W.3d [469,] 494–503 [(Tex. 2019)]; *Green v. Villas on Town Lake Owners Ass'n, Inc.*, No. 03-20-00375-CV, 2021 WL 4927414, at *5–6 (Tex. App.—Austin Oct. 22, 2021, pet. denied) (mem. op.). To meet *Rohrmoos Venture*'s standards, a fee claimant must at least put on evidence of the "lodestar method" for calculating fee awards. 578 S.W.3d at 501. "Under the lodestar method, the determination of what constitutes a reasonable attorney's fee involves two steps." *Id.* (quoting *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012)). "First, the [factfinder] must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work." *Id.* (quoting *El Apple I*, 370 S.W.3d at 760). "The [factfinder] then multiplies the number of such hours by the applicable rate, the product of which is the base fee or lodestar." *Id.* (quoting *El Apple I*, 370 S.W.3d at 760). "The [factfinder] may then adjust the base lodestar up or down (apply a multiplier), if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case." *Id.* (quoting *El Apple I*, 370 S.W.3d at 760). "[A] claimant seeking an award of attorney's fees must prove the attorney's reasonable hours worked and reasonable rate by presenting sufficient evidence to support the fee award sought." *Id.* at 501–02. "Sufficient evidence includes, *at a minimum*, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.* at 502 (emphasis added).

*Callaway*, 2025 WL 1909338, at *34–35 (quoting *Faith P. & Charles L. Bybee Found. v. Knutzen*, 681 S.W.3d 818, 839–40 (Tex. App.—Austin 2023, no pet.)).

The lodestar calculation carries a presumption of reasonableness, but the trial court retains discretion to adjust the fee amount after reviewing the record and considering various factors:

"[T]here is a presumption that the base lodestar calculation, when supported by sufficient evidence, reflects the reasonable and necessary attorney's fees that can be shifted to the non-prevailing party." *Id.* at 499. Most . . . factors[ from *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812 (Tex. 1997) (op. on reh'g)]—"the time and labor required"; "the novelty and difficulty of the questions involved"; "the skill required to perform the legal service properly"; "the fee customarily charged in the locality for similar legal services"; "the amount involved"; "the experience, reputation, and ability of the lawyer or lawyers performing the services"; "whether the fee is fixed or contingent on results obtained"; "the uncertainty of collection before the legal services have been rendered"; and "results obtained"—are already incorporated into the base lodestar. [*Rohrmoos Venture*, 578 S.W.3d] at 500. "[A] fee opponent [who] seeks a reduction [from the base lodestar amount] . . . bears the burden of providing specific evidence to overcome the presumptive reasonableness of the base lodestar figure." *Id.* at 501.

Even if the attorney's fees request is not contested, the trial court is not obligated to award the requested amount, but the award must bear a reasonable relationship to the fees in controversy. *Iola Barker v. Hurst*, 632 S.W.3d 175, 193 (Tex. App.—Houston [1st Dist.] 2021, no pet.). Thus, when determining an appropriate fee award, the trial court is entitled to examine the entire record and to view the matter in light of the amount in controversy, the nature of the case, and his or her personal experience as a lawyer or judge. *Mignogna*[ *v. Funimation Prods., LLC*, No. 02-19-00394-CV], 2022 WL 3486234, at *17 [(Tex. App.—Fort Worth Aug. 18, 2022, pet. denied) (mem. op.)] (citing *Iola Barker*, 632 S.W.3d at 193–94).

*Darrigan v. Am. Prospect, Inc.*, No. 02-24-00061-CV, 2025 WL 2423579, at *19 (Tex. App.—Fort Worth Aug. 21, 2025, pet. filed) (mem. op.).

## B.    Propriety of Fee Award to Featherly

The Hospital asserts two major attacks against the fee award to Featherly: (1) the evidence is insufficient to show that the awarded fees were reasonable, and

28

(2) the fees were neither equitable nor just.[15]  Within each of the two categories, the

Hospital raises numerous arguments.[16]  We address each in turn.

## 1. Reasonableness Analysis

### a. Challenges to the Fee Award Based on the Degree of Success and the Amount in Dispute

The Hospital emphasizes that "'the degree of success obtained' should be 'the most critical factor in determining [the] reasonableness of a fee award.'"  *See Berry v. Berry*, 646 S.W.3d 516, 531 (Tex. 2022) (quoting *Farmers Grp., Inc. v. Geter*, 620 S.W.3d 702, 713 (Tex. 2021)).  Springboarding off that, the Hospital argues that the slight degree of success, if any, achieved by Featherly's lawyers, cannot support the trial court's fee award.  The Hospital also contends within its reasonableness challenges that the amount in dispute does not support the fee award.  We address these arguments together and conclude that (1) this case presents unique circumstances that

---

[15]The only objection that the Hospital raised in the trial court regarding Featherly's attorney's fees was that he should not be awarded any fees for work done before January 17, 2024, because that was when he filed his first amended petition and "for the first time asked that the Hospital [l]ien be limited to the amount found to be a reasonable and regular rate rather than simply voided."  But because the trial court determined the amount of attorney's fees, the Hospital may still challenge the sufficiency of the evidence supporting the fee award because such a challenge may be raised for the first time on appeal.  *See Dinkins v. Calhoun*, No. 02-17-00081-CV, 2018 WL 2248572, at *8 (Tex. App.—Fort Worth May 17, 2018, no pet.) (mem. op.).

[16]The Hospital, however, does not make any argument specifically attacking the conditional appellate fee awards.  *See* Tex. R. App. P. 38.1(i).  Accordingly, we limit our analysis to the fee award of $90,900 to Jinks for his representation of Featherly at trial and the fee award of $105,266 to Michel for his representation of Featherly in the first appeal.

distinguish it from the cases that the Hospital relies on and (2) we will not override the trial court's discretion when it is apparent that it did not rule arbitrarily, unreasonably, or without regard to guiding legal principles.

At the outset we note that an award of attorney's fees is not dependent on a finding that the party "substantially prevailed." *Uptown Cars*, 715 S.W.3d at 845–46 (citing *Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 637 (Tex. 1996)). In *Berry*, the co-trustee complained of the $85,000 in attorney's fees that he was awarded because he had incurred fees substantially in excess of that amount. 646 S.W.3d at 531. The supreme court did not conduct a detailed analysis but instead (1) succinctly noted that the co-trustee had lost the case on summary judgment and that the co-trustee could therefore not demonstrate the fee award was unreasonable and (2) held that the district court's award of attorney's fees offsetting the $85,000 amount to the co-trustee and remaining co-trustees was reasonable. *Id.* Similarly, in *Geter*, which was quoted in *Berry*, the supreme court noted that when the trial court initially awarded fees, the trial court made findings that the plaintiffs were "the successful party in this litigation" and awarded fees based on "the results obtained." 620 S.W.3d at 712–13. The supreme court stated that on appeal, the appellant and the class had not prevailed in any regard and had obtained no favorable results. *Id.* at 713. Because the supreme court reversed the award of fees and costs, it noted that "[o]n remand, 'the degree of success obtained' should, as always, be 'the most critical factor in determining reasonableness of a fee award.'" *Id.* Here, we are not presented with

30

the same scenario as in *Berry* or *Geter*; Featherly did not lose but instead reduced by approximately one-fourth the amount that the Hospital sought to recoup from him.

The Hospital also relies on the *Smith* case to support its argument that the "extraordinarily slight degree of success obtained by Featherly . . . cannot possibly support the attorney's compensation awarded by the trial court."[17] *See* 296 S.W.3d at 548. As summarized in the Hospital's brief,

> In *Smith*, the Texas Supreme Court examined a case where the plaintiff had sought over $200,000 in damages but the jury awarded only $65,000. 296 S.W.3d [at] 548 . . . . The jury had also awarded nothing in attorney's fees and the court of appeals reversed that finding and awarded $62,438.75[,] which was the full amount of attorney's fees requested. *Id.* The Court reversed the court of appeals['s] decision holding that an award of the full fee sought, "though supported by uncontradicted testimony, was unreasonable in light of the amount involved and the results obtained . . . ." *Id.*

The Hospital inserted ellipses at the end of that quote, leaving out the full holding that "the fee, though supported by uncontradicted testimony, was unreasonable in light of the amount involved and the results obtained, *and in the absence of evidence that such fees were warranted due* [*to*] *circumstances unique to this case.*" *Id.* (emphasis added). It is not until the next page in the Hospital's brief that it notes that "'circumstances unique

---

[17]The Hospital also cites *Iola Barker* and summarizes it as "reversing and remanding because [the] award of fees was not proportionate to [the] results achieved and [the] amount at stake in [the] litigation." 632 S.W.3d at 196. At first blush, it would seem that the Hospital is implying that the appellate court concluded that the fee award was too high. But in actuality, the Houston First Court reversed because it held that the award of only 17% of the attorney's fees incurred was arbitrary, unreasonable, and without reference to guiding principles as it bore no relationship to the uncontroverted evidence of attorney's fees incurred. *Id.* at 194–95.

to [the] case' might possibly warrant an award such as [the] one at issue in that case" but then argues that "there is no such evidence in this case that would justify the size of the fee awarded by the trial court." The Hospital goes on to minimize the role that it played in escalating the attorney's fees, summarily concluding that its failure to settle the dispute before trial, its jury demand, its pleading of affirmative defenses, its assertion of counterclaims, and its appeal after the first trial were not "unique to a suit for declaratory judgment." We agree that if singled out, any one of these might not be considered unique, but the trial court was entitled to examine the entire record in determining a reasonable fee amount. And we will do the same in reviewing the fee award.

Abiding by the supreme court's precedent to not consider the amount involved and the results obtained in a vacuum but instead reviewing the record to determine if there is evidence that the attorney's fees were warranted due to unique circumstances, we note that Featherly, as well as the trial court, detailed on the record the case's unique circumstances. As explained at the hearing on the motions to enter judgment, as well as in Jinks's affidavit, Featherly attempted to negotiate a lower amount— requesting $12,000—and that request was met not with a counteroffer but with silence. So Featherly hired an expert and filed suit requesting the reasonable and regular rate of $7,372.42 (the amount determined by his expert). The Hospital made clear that it had a $200,000 budget to defend the full amount of the $24,682 lien, and

32

it succeeded in spending almost every penny of its budgeted amount. As noted in Jinks's affidavit,

> What started as a simple issue of what was the ["]reasonable and regular["] amount owed by [Featherly] was overly complicated by the [Hospital's] multiple pleadings asserting a garden variety of defenses and counterclaims. Rather than proceeding to a bench trial to determine whether the lien was valid, invalid, [or] partially invalid, [the Hospital] transfigured this into a complex legal matter. [The Hospital]'s legal maneuverings in this case constitute an outlier to a typically routine negotiation over a hospital lien amount. [The Hospital] treated this case as an existential attack on its ability to maintain leverage over similarly situated patients with the filing of hospital liens based on the chargemaster rate. The paramount significance placed on this simple dispute by [the Hospital] was reflected by its litigation budget of $200,000.00 on charges of $24,682.00 where [Featherly] was offering to pay $12,000.00 to resolve in March 2016.

Yet despite spending almost $200,000 and claiming that its fees were reasonable (an argument that is addressed below in the Hospital's second point), the Hospital claims that it was unreasonable for Featherly to spend approximately the same amount to resolve this suit after the Hospital refused to negotiate any amount lower than the full amount of the lien. Looking at the entire record, we cannot say that the trial court abused its discretion in requiring the Hospital to bear the consequences of its negotiation and trial strategy.

Our conclusion should not be read as saying that it is automatically reasonable to spend $200,000 in bringing a lawsuit to reduce a hospital lien. Rather, it is a reasonable conclusion that when one side spends $200,000 in attorney's fees by amending its answer four times, demanding a jury trial, and filing its own cross-appeal,

33

the other side will necessarily respond and incur a similar amount of attorney's fees. This principle, which sounds in Newton's Third Law of Mechanics, has been previously applied to attorney's fees by the Fifth Circuit and mentioned in a 2024 dissenting opinion from the El Paso Court of Appeals:

> [T]he amount [of $213,072.94 for a fee award] is more than anyone would expect for a simple consumer dispute. But there is an explanation for that. Newton's Third Law of Mechanics states that for every action, there is an equal and opposite reaction. *See Tex*[.] *Nat'l Bank v. Sandia Mortg. Corp.*, 872 F.2d 692, 700 (5th Cir. 1989) (citing Newton's third law as explanation for award of attorney's fees against litigant who blocked a reasonable request). Applying that principle here, a litigant cannot make hundred-page filings and expect that the other side will not read (and bill for them). Nor can they assert untested legal theories and expect the other side will not expend resources to contest them. . . . The fee, while high by most standards, was supported by the evidence and unique circumstances of this case.

*See Gaudet v. Icon Custom Home Builder, LLC*, No. 08-23-00075-CV, 2024 WL 3976047, at *9 (Tex. App.—El Paso Aug. 28, 2024, pet. filed) (mem. op.) (Alley, C.J., dissenting) (footnote omitted). Moreover, Featherly was defending against not just the hospital lien but also the Hospital's burgeoning attorney's fees, which he was entitled to defend against.

Case law makes clear that it is not our role to second-guess the trial court's determination of attorney's fees. *See Cockrell v. Cockrell*, No. 08-24-00096-CV, 2025 WL 1085581, at *5 (Tex. App.—El Paso Apr. 10, 2025, no pet.) (mem. op.) ("So long as there is evidence to support the trial court's decision, we cannot second-guess it."). Instead, the determination of the fee award in the declaratory-judgment action was

34

clearly a matter within the trial court's discretion. *See Bocquet*, 972 S.W.2d at 21. And here, the trial court's discourse on the record shows that in reaching its decision it considered the entire record and viewed the matter in light of the amount in controversy, the degree of success obtained, as well as the circumstances unique to this case—thus demonstrating that it did not act arbitrarily, unreasonably, or without regard to guiding legal principles. *See id.*

We therefore hold that the trial court did not abuse its discretion by determining that this case presented unique circumstances that warranted a fee award that exceeded the amount in dispute. *See Champion Food Serv., Inc. v. ProAlamo Foods, L.L.C.*, 716 S.W.3d 881, 893 n.2, 894, 904 (Tex. App.—San Antonio 2024, pet. filed) (holding that over $200,000 in attorney's fees was reasonable and necessary as a matter of law due to the complexity and litigious nature of the case even though appellee was awarded only $46,396.58 of the $73,052.95 that it sought in actual damages); *Universal Printing Co. v. Premier Victorian Homes, Inc.*, 73 S.W.3d 283, 286, 297 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (upholding $100,000 fee award when actual damages totaled $10,000 in a declaratory-judgment action); *cf. McComb v. Leach*, No. 02-24-00283-CV, 2025 WL 2005513, at *1–2, *12 (Tex. App.—Fort Worth July 17, 2025, no pet.) (mem. op.) (concluding that sufficient evidence supported that the total amount of hours worked was reasonable rather than excessive or extreme and upholding fee award of $124,158.75—the full amount requested—in defending against a Texas Citizens Participation Act lawsuit that was dismissed).

### b. Evidence Was Not Conclusory Nor Was It Insufficient to Support Reasonableness of Fees

Also under its reasonableness challenge, the Hospital contends that the evidence proffered in support of the *Arthur Andersen* factors does not support the trial court's fee award. Specifically, the Hospital argues that (1) the amount in dispute does not support the fee award (which we have discussed above), and (2) the testimony as to the time and labor required, the novelty and difficulty of the questions involved, the skill required to perform the legal service properly, and the reasonableness of the rate charged is conclusory.[18] We will separately address the attorney's fees awarded to Featherly's two attorneys and conclude that nonconclusory, sufficient evidence supports the fee award to Jinks and that the evidence is insufficient to support part of the fee award to Michel.

---

[18]Featherly argued that the Hospital failed to preserve its complaint regarding the paralegals' qualifications by not objecting. As explained in the Hospital's reply brief, "Featherly mischaracterizes the Hospital's contentions as objections to the qualifications of witnesses" and points out that it is not challenging the qualifications but rather that the affidavits are conclusory for not describing the experience or identifying the persons providing the legal services. An objection that an affidavit is conclusory raises a defect of substance, which can be raised for the first time on appeal. *Carson v. Blue Cross Blue Shield of Tex., Inc.*, No. 15-24-00108-CV, 2025 WL 2485945, at *9 (Tex. App.—15th Dist. Dec. 18, 2025, no pet. h.) (substituted mem. op.) (citing *Nationwide Coin & Bullion Rsrv., Inc. v. Thomas*, 625 S.W.3d 498, 504 (Tex. App.—Houston [14th Dist.] 2020, pet. denied)). We therefore will address the merits of this argument.

36

### (1) Attacks on Jinks's Fees

We begin by analyzing the Hospital's attacks on the affidavit testimony that Jinks submitted to support his fee request. For ease of comparison, we set forth a chart with the Hospital's attacks and what Jinks's affidavit and its attachments show:

| The Hospital's Attack | What Jinks's Affidavit Says |
|---|---|
| Jinks does not attach a curriculum vitae setting out his experience and does not describe his experience with respect to "civil litigation" or describe the cases other than to note that he has tried many cases in the trial court below and has been licensed to practice for many years. | —He has experience negotiating liens for many years with Texas Health; <br> —from 2000 to March 2014, he negotiated with 27 hospitals under the Texas Health umbrella; <br> —he has been licensed to practice in California since 1992 and in Texas since 2000; and <br> —he has an extensive background in civil litigation and has tried numerous cases in "this Court" over the last eighteen years. |
| Jinks does not discuss whether the complexity of the cases he has handled justifies the $300 per hour that he charged his client, nor does he state anywhere in his affidavit that $300 per hour is a reasonable rate for this type of legal services performed in the Dallas–Fort Worth area. | —Featherly's retention of Jinks on this case precluded Jinks from accepting other employment; <br> —the case was undesirable for most attorneys because of its uniqueness, its contentiousness, the multiple motions for summary judgment, the constant amendments of counterclaims by the Hospital, and the fact that attorney's fees are discretionary under the UDJA; <br> —the novelty and difficulty of the questions involved in this case necessitated 303 hours of work; and <br> —"[t]he fees charged in this case are customarily charged in this area for the same or similar services for an attorney with [Jinks's] experience, reputation, and ability, considering [the] type of controversy, the time limitations imposed, and the results obtained." |

37

| | |
|---|---|
| Jinks's testimony is "devoid of specificity" and "generically references the investigation of claims, 'drafting pleadings,'" etc., "but fails to provide even a modicum of detail to support the time and labor devoted to support his fee request." The Hospital acknowledges that Jinks attached his time sheets but claims those also lack detail. | Although Jinks's affidavit sets forth six broad categories of the type of work that he performed in this case, he attached to his affidavit ten pages of time sheets showing the dates, the tasks, and the amount of time spent on each task. Here are two examples of the entries: "2/21/17 - R/R [receive and review] Harris'[s] Counterclaim; prepare answer to Harris counterclaim 1.50 [hours]" and "10/27/17 – Prepare witness list, exhibit list, revise jury instructions 2.75 [hours.]" |

The Fourteenth Court of Appeals has held that sufficiency attacks similar to those mounted by the Hospital against Jinks's affidavit testimony fail:

> Here, [appellee]'s evidence in support of its attorney's fees consisted of two affidavits, providing the attorney's opinion that the sum of $73,950 in attorney's fees (150 hours x $248/hour for one attorney, and 125 hours x $294/hour for another attorney) was a reasonable and necessary fee, based on the *Arthur Andersen* factors. In addition, [appellee] attached redacted billing records of [appellee]'s attorneys to these affidavits, which provided: (1) the date of the work performed; (2) the substance of the work performed; (3) the amount of time spent on each specific task; and (4) the attorney's hourly rate. [Appellant] offered no controverting evidence. [Appellee]'s lodestar calculation provided basic proof of itemized tasks, the time required for those tasks, and the rate charged by the person performing that task. *See* [*City of Laredo v.*] *Montano*, 414 S.W.3d [731,] 736[ (Tex. 2013)]. Accordingly, [appellee]'s proof of attorney's fees is neither conclusory nor insufficient. *See id.*; *see also Rohrmoos Venture*[], 578 S.W.3d at 502 (strongly encouraging the inclusion of billing records to support lodestar calculation when reasonableness or necessity of fees is contested).

*Comella v. Comerica Bank*, No. 14-24-00199-CV, 2025 WL 718742, at *7 (Tex. App.—Houston [14th Dist.] Mar. 6, 2025, no pet.) (mem. op.).

38

The Hospital also argues that Jinks fails to state that the amount of time that he spent on the case was "reasonable and necessary under the circumstances," then admits that Jinks's affidavit states that "[t]he attorney services and fees charged in this case were necessary, were reasonable, and were incurred in the prosecution of this suit," and yet claims this is conclusory. As the Dallas Court of Appeals has noted, such statements are sufficient:

> The record shows [that the attorney] testified in his affidavit as to his level of experience, his personal knowledge of the facts stated therein, the type of work he and others performed on the case, and the amount of "reasonable" and "necessary" fees based upon his hourly rate and the time required as reflected in attached copies of billing statements and a report showing [appellee's] payments. We cannot agree with [appellants] that [the attorney's] affidavit is conclusory. *See Rohrmoos Venture . . .* , 578 S.W.3d [at] 503–05 . . . ; *Ellis v. Renaissance on Turtle Creek Condo. Ass'n, Inc.*, 426 S.W.3d 843, 859 (Tex. App.—Dallas 2014, pet. denied); *Dodd v. Savino*, [426 S.W.3d 275, 294 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (op. on reh'g)] (rejecting argument that attorney's affidavit testimony was conclusory where attorney attested she is duly licensed attorney with personal knowledge of work performed and indicated type of work performed).

*AMPM Enters., Inc. v. Borders & Long Oil, Inc.*, No. 05-22-00262-CV, 2023 WL 5767563, at *5 (Tex. App.—Dallas Sept. 7, 2023, no pet.) (mem. op.).

In light of what Jinks's affidavit actually says and what the attached time sheets show, we cannot conclude that the evidence of Jinks's fees is conclusory or insufficient. *See Callaway*, 2025 WL 1909338, at *35–36 (holding that statements in attorney's declaration served as some evidence of the reasonableness of fees); *Comella*, 2025 WL 718742, at *7; *AMPM Enters.*, 2023 WL 5767563, at *5; *Est. of Stavron*, No.

39

02-20-00404-CV, 2021 WL 5227081, at *6 (Tex. App.—Fort Worth Nov. 10, 2021, no pet.) (mem. op.) (holding that the billing records and the attorney's testimony supplied sufficient proof of the lodestar essentials described in *Rohrmoos Venture*).

## (2)    Attacks on Michel's Fees

The Hospital also argues that Michel's affidavit in support of his fee request is "conclusory or inconsistent with the supporting documents."  The Hospital contends that Michel did not identify the associates who worked on the case or describe their qualifications or experience to justify the rate charged.  The Hospital likewise argues that Michel did not identify the legal assistants whose time he included in his fee request, describe their qualifications and experience, or offer testimony that the rates charged for their work or the amount of time spent was reasonable.  The Hospital acknowledges that Michel attached his billing invoices to his affidavit and that the billing invoices used initials to identify the associates and legal assistants, but the Hospital claims that this identification was insufficient to meet the standards set forth in *El Apple I*.

The Texas Supreme Court stated in *El Apple I*,

> While both attorneys stated in their affidavits that "[l]egal assistant time was necessarily expended in the prosecution of [the] case," no evidence was offered to describe the tasks their legal assistants performed, who performed these services, or their qualifications.  When obtaining payment for work done by paralegals or legal assistants, Texas courts have required more information, such as:
>
> > (1) [T]he qualifications of the legal assistant to perform substantive legal work; (2) that the legal assistant performed

40

> substantive legal work under the direction and supervision of an attorney; (3) the nature of the legal work performed; (4) the legal assistant's hourly rate; and (5) the number of hours expended by the legal assistant.

*All Seasons Window* [*&*] *Door Mfg., Inc. v. Red Dot Corp.*, 181 S.W.3d 490, 504 (Tex. App.—Texarkana 2005, no pet.) (quoting *Multi–Moto Corp. v. ITT Com*[.] *Fin. Corp.*, 806 S.W.2d 560, 570 (Tex. App.—Dallas 1990, writ denied)[ (op. on reh'g)]). Paralegal fees have been denied absent such proof. *Moody v. EMC Servs., Inc.*, 828 S.W.2d 237, 248 (Tex. App.—Houston [14th Dist.] 1992, writ denied).

*El Apple I*, 370 S.W.3d at 763–64.

Here, Michel's affidavit reflects the following statements regarding the reasonableness of the fees charged for his staff:

> My associate attorneys bill at an hourly rate of $275.00 to $375.00 per hour . . . . These rates are reasonable in this geographic area as attorney's fees are generally billed between $215 - $375 per hour. . . .
>
> . . . I am of the opinion that the attorney's fees performed on behalf of [Featherly] in connection with this proceeding by me and my staff are reasonable and necessary fees in Tarrant County, Texas, for the legal services rendered on behalf of [Featherly] . . . .

Michel attached thirteen pages of billing records to his affidavit. Those records reflect the date of the services rendered, the initials of the person who performed the services, a description of the services rendered, the hours worked, any adjustment decreasing the hours worked, the amount of billable hours, the rate of the person who performed the service, and the total amount billed by that person on the stated date.

We first look at the evidence supporting the fees billed by the associate attorneys. Although the names are not given, the billing records reflect that LML

41

billed $275 per hour and that RES billed $350 per hour and provide detailed entries of the tasks that they performed on various dates. We conclude that the billing detail combined with Michel's affidavit testimony constitutes sufficient evidence to support including the associates' fees in the fee award.

We are at a loss as to any information about the legal assistants or paralegals who worked on this case. The billing records show that CTG and EMT billed at $150 per hour, that EKB and DJM billed at $250 per hour, and that the total amount they billed was $6,101.50. These billing rates fall below the associate rates that Michel testified to in his affidavit. Michel did not mention that he employed any legal assistants or paralegals to work on this case; did not provide billing rates or any information about whether such rates were reasonable; and (assuming that CTG, EMT, EKB, and DJM are legal assistants or paralegals because their hourly rates fell below the range of hourly rates that Michel set forth for associates in his affidavit) did not state how any of them were qualified to participate in document production. Additionally, some of the tasks billed by those individuals involved phone calls or uploading documents, which do not constitute work traditionally done by an attorney and is not recoverable as a fee. *See Guardianship of Alford*, 596 S.W.3d 352, 361 (Tex. App.—Texarkana 2020, no pet.). Because there was no evidence concerning the legal assistants' qualifications, whether they performed substantive legal work under the direction and supervision of an attorney, or whether their fees were reasonable, we hold that the evidence is legally insufficient to support the legal-assistant fees that

42

were included in the fee award based on the total fees submitted by Michel. *See All Seasons Window & Door*, 181 S.W.3d at 504 (modifying fee award because there was no evidence concerning the legal assistants other than the hourly rate and number of hours expended); *Clary Corp. v. Smith*, 949 S.W.2d 452, 469–70 (Tex. App.—Fort Worth 1997, pet. denied) (holding evidence legally insufficient to support award for legal-assistant fees when attorney did not explain how legal assistant was qualified to participate in document production or even that she was qualified at all); *Gill Sav. Ass'n v. Int'l Supply Co.*, 759 S.W.2d 697, 705 (Tex. App.—Dallas 1988, writ denied) (holding evidence concerning the work performed by the legal assistants legally insufficient to support the fee award when their qualifications were not listed, when their hourly rates were not listed, and when initials made it impossible to determine which class of professional was performing which task).

The Hospital further claims that the billing records conflict with Michel's affidavit because the billing records show only $84,146.50 in fees while the affidavit requests $105,266. The Hospital ignores that prior to the set of billing records from 2019 to 2024 totaling $84,146.50, Michel attached billing records from 2017 to 2018 totaling $18,165. Combining these two amounts provides a total of $102,311.50. It is not clear how Michel calculated the $105,266 amount.[19] We therefore hold that the

---

[19] The billing records also reflect $3,277.80 in total disbursements (i.e., filing fees and document reproduction fees). Such disbursements appear to be in the nature of costs. *See Petrello v. Prucka*, 415 S.W.3d 420, 433 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (citing *Shaikh v. Aerovias de Mex.*, 127 S.W.3d 76, 82 (Tex. App.—

43

evidence is insufficient to support $2,954.50 of the fee award—the difference between the amount requested and awarded ($105,266) and the total of the two billing invoices ($102,311.50).

### (3)    Disposition of Reasonableness Challenges

To summarize, we sustain the Hospital's reasonableness challenges in its first point solely as to the $6,101.50 in presumed legal-assistant fees and as to the $2,954.50 difference between the amount claimed in Michel's affidavit and the total fees shown in the billing invoices; we overrule the remainder of the Hospital's reasonableness challenges in its first point.

### 2.    Equitable-and-Just Analysis

As noted above, in its second category of attacks within its first point, the Hospital generally argues that the fee award to Featherly was neither equitable nor just. More specifically, the Hospital contends that the trial court abused its discretion by rewarding Featherly with his full amount of attorney's fees (1) when he used the Hospital's charges to help him gain a large personal-injury settlement and then did not pay his medical expenses (including the Hospital's lien) from the settlement, (2) when he maintained the suit solely to obtain attorney's fees, and (3) when the attorney's fees

---

Houston [1st Dist.] 2003, no pet.), and stating that "costs" usually refers to "fees and charges required by law" to be paid to the courts or some of their officers, and the amount is fixed by statute or the court's rules).  Costs are separate from attorney's fees.  *See generally* Tex. Civ. Prac. & Rem. Code Ann. § 37.009.  Even if Michel had incorrectly included these costs in his calculation, the total would have been $105,589.30, which still does not match the total that he requested.

44

were incurred prior to his amending his pleading to change his theory of the case. The Hospital's arguments fail in light of the discretion that is given to the trial court in deciding what amount of attorney's fees is equitable and just.

The trial court's decision whether to award attorney's fees in a UDJA case depends on the court's conclusion whether it is just and equitable to do so under all the circumstances of the case, not on the quantum of proof as to the amount incurred or the reasonableness and necessity of such fees. *River Creek Dev. Corp. v. Preston Hollow Cap., LLC*, No. 03-23-00037-CV, 2024 WL 3892448, at *9 (Tex. App.—Austin Aug. 22, 2024, pet. filed) (mem. op.) (citing *In re Est. of Kuykendall*, 206 S.W.3d 766, 772 (Tex. App.—Texarkana 2006, no pet.)). Said another way, the determination of whether an award of attorney's fees under the UDJA would be equitable and just is not susceptible to direct proof but instead is a matter of fairness in light of all the circumstances. *Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 522 S.W.3d 471, 494 (Tex. App.—Houston [14th Dist.] 2016, pets. denied).

As set forth above, the trial court was aware of all the circumstances of the case, including Featherly's attempts to negotiate a lower amount for the Hospital's lien prior to filing suit and the Hospital's decision to dedicate $200,000 to fighting for the full amount of the lien. The Hospital makes much of how Featherly reworded his claim in his first amended petition—to declare the lien invalid as to the amount that exceeded the reasonable and regular rate rather than completely invalidating the lien. As noted in our prior opinion, Featherly's new prayer for relief was not inconsistent

45

and did not "fundamentally change[] the nature of the lawsuit" as the Hospital claims. *See Featherly*, 648 S.W.3d at 582 n.26 ("The prayer for cancellation of the whole [debt and lien] is not inconsistent with a cancellation of a part. The whole includes the items of which it is composed and a prayer for the cancellation of the whole encompasses a prayer to cancel parts." (quoting *Garner v. City of Houston*, 323 S.W.2d 659, 662 (Tex. App.—Houston 1959, no writ))). Moreover, the trial court was free to conclude that the Hospital's decision to proceed to a second trial instead of offering to settle in light of Featherly's narrowed request for relief caused him to rack up additional fees.

After putting on evidence about the reasonableness and necessity of attorney's fees, Featherly was not required to put on separate, distinct evidence on the question of law as to whether an award of fees was also equitable and just. *See Carpenter v. Carpenter*, No. 02-10-00243-CV, 2011 WL 5118802, at *6 (Tex. App.—Fort Worth Oct. 27, 2011, pet. denied) (mem. op.). Considering the record and the circumstances here, and for the reasons stated in our analysis of the other issues, we cannot conclude that the trial court abused its discretion by determining that an award of attorney's fees to Featherly was equitable and just.

We overrule the Hospital's equitable-and-just challenges, thus disposing of its first point.

46

## C.     Propriety of the Denial of any Fee Award to the Hospital

In its second point, the Hospital argues that the trial court abused its discretion by failing to award the Hospital its attorney's fees. Specifically, the Hospital notes that its fees were uncontested and were proven as a matter of law. Although the Hospital argues that the failure to award it fees was an abuse of discretion, it fails to give due weight to that standard and did not carry its burden to show that such abuse occurred.

Here, the trial court explained on the record why it awarded attorney's fees solely to Featherly, noting that the Hospital had "run up attorney's fees" because they would not settle and that the Hospital "happen[ed] to be in a better position to absorb $1[9]0,000 of attorney's fees." Based on its explanation, it is clear that the trial court exercised its discretion in light of all the circumstances and did not act arbitrarily or unreasonably.

Notably, the Hospital has not explained what applicable guiding rules or principles the trial court disregarded in denying its request for attorney's fees. Rather, the Hospital bases its argument on the uncontested nature of its fees and cites cases from our sister courts in which fee awards were reversed because there was evidence of uncontroverted attorney's fees. We note that none of the three cases[20] cited by the

---

[20] *See Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990) (involving a fee award under the Election Code); *Dyer v. Franz*, No. 13-13-00347-CV, 2014 WL 804032, at *1–2 (Tex. App.—Corpus Christi–Edinburg 2014, no pet.) (mem. op.) (rendering a fee award under Texas Civil Practice and Remedies Code

Hospital involve a discretionary award of attorney's fees under the UDJA. Moreover, even if the cited cases did involve an award of uncontroverted fees under the UDJA, they would not be binding on this court.

As we have noted in prior opinions, "A trial court is not 'a mere rubber stamp or bean-counter; even when evidence of attorney's fees is uncontroverted, a trial court is not obligated to award the requested amount.'" *Est. of Stavron*, 2021 WL 5227081, at *8 (quoting *Mogged v. Lindamood*, No. 02-18-00126-CV, 2020 WL 7074390, at *18 (Tex. App.—Fort Worth Dec. 3, 2020, pet. denied) (mem. op. on en banc reconsideration)); *see also Darrigan*, 2025 WL 2423579, at *19. While the UDJA permits a trial court to award attorney's fees, it certainly does not require it to do so. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009; *Bocquet*, 972 S.W.2d at 20. Absent a showing of an abuse of discretion, the trial court's decision will stand. *See Est. of Ryther*, No. 01-23-00600-CV, 2025 WL 2312266, at *6 (Tex. App.—Houston [1st Dist.] Aug. 12, 2025, no pet.) (mem. op.).

Accordingly, we hold that the trial court did not abuse its discretion by denying the Hospital's request for attorney's fees. *See, e.g.*, *Lopez v. State Nat'l Ins. Co.*, No. 13-24-00041-CV, 2025 WL 2726535, at *6 (Tex. App.—Corpus Christi–Edinburg Sept. 25, 2025, no pet. h.) (mem. op.) (holding that the trial court did not abuse its discretion by denying appellees' discretionary attorney's fees because "even if

_____

Section 38.001(8)); *Am. 10-Minute Oil Change, Inc. v. Metro. Nat'l Bank-Farmers Branch*, 783 S.W.2d 598, 602 (Tex. App.—Dallas 1989, no writ) (rendering a fee award based on summary-judgment evidence in a suit for breach of contract involving a guaranty).

appellees have shown that their attorney's fees were reasonable and necessary, a trial court may determine that an award of such fees would not be equitable and just"); *Est. of Ryther*, 2025 WL 2312266, at \*6 (holding that the trial court did not abuse its discretion by determining that it would not be equitable and just to award appellant attorney's fees under the UDJA). We overrule the Hospital's second point.

## IV. Conclusion

Having sustained a portion of the Hospital's first point, we modify the judgment to delete $9,056—the total of the presumed legal-assistant fees of $6,101.50 and the $2,954.50 difference between the amount claimed in Michel's affidavit and the total fees shown in the billing invoices—from Michel's $105,266 fee award, thus resulting in an award of $96,210 in attorney's fees to Michel. As modified, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: December 23, 2025

49